JAMES GLASS, Appellant, v. HUTCHINSON ICE CREAM COMPANY et al., Appellees.

No. 41187.

JUNE 24, 1932.

Stipp, Perry, Bannister & Starzinger and E. B. Carpenter, for appellant.

Harry Wifvat, Parrish, Cohen, Guthrie & Watters, and J. L. Parrish, Jr., for appellees.

EVANS, J.—The appeal is presented by the appellant upon 28 assignments of error, most of which relate to rulings on the admission of testimony. These assignments are fairly divisible into groups, and we shall so consider them. Before proceeding to such consideration, it seems advisable that we first state the main features of the case so far as they are undisputed in the evidence. Three cars were involved in the accident. These are referred to in the record both by the name of the car and by the name of the owner. The plaintiff was riding in a Dodge car, owned and driven by Alborn, and traveling west. A Ford coupé owned and driven by Floyd and Lloyd Pierce was traveling east upon the same road. At some distance behind the Ford coupé was a Ford truck, owned by the defendant Hutchinson Ice Cream Company and driven by the defendant Foster, and also traveling east. The Ford truck was occupied by Foster and his wife; the Ford coupé was occupied by the brothers Pierce; and the Dodge sedan was occupied by seven boys, four in the rear seat and three in the front. The towns of Jamaica, Dawson, and Perry figure in the evidence. Jamaica lies six miles west of Dawson, and Perry lies approximately the same distance east of Dawson. These towns are connected by a wide graveled road, upon which the accident occurred. The Dodge

car was traveling from Perry toward Dawson, and the other two cars from Dawson toward Perry. The accident happened about a mile and a quarter or a mile and a half easterly from Dawson. The accident involved two collisions in close succession. The Ford coupé occupied by the Pierces first collided with the Dodge. That collision is described as a side-swipe. Each of those cars was apparently traveling with its left wheel upon the center of the road. The "swipe" resulted in crushing the south side running board and the rear fender of the Dodge. The impact of the collision upon the rear end of the Dodge turned the course of the Dodge car so that it was headed southwesterly. It so proceeded over the south half of the highway and directly in front of the on-coming truck of the defendant. The truck was on its proper side of the road. The driver was unable to avoid the collision, and the front end of the truck struck broadside the right side of the Dodge car. The plaintiff's witness Lloyd Pierce described the initial collision as follows:

"Just before the accident, we were going right at 35 miles an hour. We side-swiped this Dodge car. After we side-swiped it, it jerked the wheel out of my brother's hand, and whipped across the road a couple of times, and turned completely around, headed west on the north side of the road, and tipped over in the ditch. * * * I do not know which car at the time of the side-swiping was over at the center of the road. I do not know whether it was our car that was over too far north or the Dodge car that was too far south."

Plaintiff's witness Alborn, driver of the Dodge car, described the collision as follows:

"The Ford coupé that side-swiped us hit the south side of the car as we were going west. That caused the Ford coupé to switch over to the north side of the road. In about two seconds the Ford truck hit our car. Right after the Dodge and Ford had side-swiped, my car went to the south side of the road, headed in a southwesterly direction, and the defendant's truck was headed in an easterly direction. The front end of the truck was against the right doors of our sedan."

It will be noted from the foregoing that the collision of the

Dodge car with the truck of the defendant was the result of the preceding collision with the Ford coupé. So far as the immediate circumstances of the accident are concerned, there was no evidence of negligence or fault on the part of the driver of the Ford truck. The theory of the plaintiff was that the defendant's truck was responsible for the collision because of the wrongful conduct of its driver in engaging in a race upon the highway with the Ford coupé driven by the Pierces. It is conceded, as a matter of law, by the defendant, that if its truck was engaged in a race upon the highway with another automobile and a collision occurred as a result of the pressure or excitement of such race, then both parties to the race would be liable for the resulting collision. It was upon this theory that the plaintiff sought to show that such a race was "on" between the two east-bound cars at the time the collision resulted. The larger number of assignments of error are predicated upon rulings of the court in the admission of evidence to that end. It was made to appear that at Jamaica the defendant's truck waited at a railway crossing for the passing of a freight train; that at the time the freight train cleared the crossing the Pierce brothers passed the truck while it was still standing at the crossing, and proceeded on the road; that a short time thereafter the truck passed the Ford coupé; that a half a mile farther on the coupé passed the truck. From that point on the vehicles proceeded eastward without further passing of each other. The defendant moved to strike this evidence as being too remote, and the court sustained the motion. Other evidence was offered of the apparent speed of the vehicles at other stages of the road, and this evidence also was rejected as remote. It appears that the road in question was a wide graveled road. It extends easterly from Dawson for nearly one-half mile to a right-angle corner, where it runs north. About one quarter of a mile north of such corner is another right-angle corner, where the road turns east. The collision occurred about one-half mile east of such second corner. It seems to have been taken for granted by both sides that these corners were not conducive to racing. In rejecting testimony as too remote, the court ruled that the plaintiff would be permitted to introduce evidence tending to show racing at any point between the first corner and the place of the accident, an approximate distance of three quar-

ters of a mile. In the final submission of the case the court ruled that the plaintiff had introduced no evidence of any racing within the range allotted to him, and so instructed the jury. The appellant assigns error upon such ruling, as well as upon the rulings of the court which excluded evidence on the ground of remoteness.

 It is manifestly true that evidence of speeding and racing between two cars upon the road may be so remote in time and distance as not to be admissible in evidence. Whether it be such in a given case must of necessity rest in the sound discretion of the trial court. Such is the universal holding of the cases cited in the briefs. If there had been evidence of such racing or speeding immediately before the accident and within the space of three quarters of a mile, as ruled by the court, then such court might properly extend the range of the evidence to a longer time and distance for the purpose of corroboration. Manifestly the court might properly say in its discretion that remote evidence will not be *first* received, nor received at all unless there be evidence of such racing immediately preceding the accident. If the court was correct in holding that no evidence had been introduced of racing at any point between the place of the accident and the first corner east of Dawson, then manifestly evidence of racing preceding such time and place could not be corroborative of anything. We proceed first, therefore, to examine the evidence relied on by the plaintiff of racing immediately preceding the accident and within the ruling of the court. Plaintiff's reliance is upon certain evidence of his witness Lloyd Pierce. This witness testified in the first instance that his brother was driving the car and that he himself looked from time to time to ascertain the location of the truck behind them. This watchfulness on the part of this witness is relied on by the plaintiff as indicating a race between the two vehicles. Appellant overlooks the fact that this evidence, so relied on, was retracted by the witness on cross-examination and on re-direct examination. On cross-examination and on re-direct examination he testified:

"I only remember looking back once after we came out of Dawson. That was just an instant before we side-swiped the Dodge."

This testimony not only fails to indicate any racing activities, but it is strong affirmative evidence that there were none. This witness was apparently hostile to the defendant and friendly to the plaintiff.

The same witness in the first instance testified as to the location of the truck upon the highway. He said: "It was pulling out to go around." In his later direct examination he retracted that statement. He then testified that he saw no indication of any change of direction or speed on the part of the truck. His first testimony, even if it had not been contradicted, was absurd, in the light of the conceded circumstances of the accident. At the time of its collision the truck was on the south side of the road, and there remained. There could be no dispute about its location. The Ford coupé was more than one hundred fifty feet to the northeast, and in the ditch on the north side of the road. One other item of evidence remains to be considered at this point. The witness Alborn, driver of the Dodge car, testified that he did not see the east-bound cars until about two seconds before the collision. He testified that in his opinion they (the east-bound cars) were traveling from 60 to 70 miles an hour. He also testified that he had never before tried to estimate the speed of cars approaching in the night. If these cars were traveling at that rate of speed at that time, it might be deemed evidence of racing. Does this evidence have any probative value? We think not. It was a mere guess on the part of the witness, and could have been fixed at any figure he chose. Pierce testified that they were traveling at 35 miles an hour. Foster's testimony was approximately the same. The circumstances under which Alborn estimated the speed afforded no opportunity whatever for such estimate. To make decision of a case turn on such evidence would be farcical indeed.

It must be said, therefore, that there was no evidence of any racing within the distance of three quarters of a mile preceding the accident and that the court properly charged the jury to that effect. In the absence of evidence immediately preceding the accident, there was no basis for corroborative evidence at a remote point of time or distance. The errors assigned, therefore, upon the rulings of the court in the rejection of such remote testimony are not sustainable.

II. On cross-examination of Foster the following occurred:

"Q. Now, Randall, the first thing you did when your cars hit was to throw a bottle into the ditch, wasn't it? A. I did not. * * * Q. Were you perfectly sober at the time of the accident? A. I was. * * * I know a Mrs. Thompson in Perry in a way. I stopped at their residence out in the country as I was starting out on that night. I stayed there, I should judge, ten or fifteen minutes. I would not say for sure. Q. You were drinking at that place, weren't you? A. I did not."

The foregoing evidence was stricken on motion of the defendant as not proper cross-examination and as irrelevant and immaterial. Complaint is made of the ruling. A broad latitude in the discretion of the court is permitted in the cross-examination of a witness for the purpose of impairing his credibility. For present purposes we shall assume that this examination was proper for such purpose. It is rather difficult to perceive why the defendant moved to strike it, and still more difficult to perceive why the plaintiff resisted the motion. The evidence, such as it was, was not hurtful to the defendant nor advantageous to the plaintiff. Sufficient to say that the exclusion of the evidence could work no prejudice to the appellant.

III. The secondary significance of the foregoing cross-examination of the defendant Foster is that the plaintiff sought to contradict the answers of the witness in rebuttal. Such contradicting evidence was objected to and excluded as not rebuttal and on other grounds.

It appears that there was no allegation or suggestion in plaintiff's pleadings predicating negligence upon intoxication or upon any other ground reflecting upon the character of this witness. Nor was there any such suggestion contained in any of the evidence offered in chief by plaintiff. Whatever function was to be served by the evidence on that subject was reserved for the rebuttal. As already suggested, a wide latitude is permitted in the cross-examination of a witness for the purpose of impairing his credibility by his own evidence. There is no hard or fast rule as to what may be shown by such examination if only it tends to impair his credibility. But when a litigant seeks to impair the credibility of an adverse witness by examina-

tion of the witness himself, he is bound by the testimony which he elicits. He may not divert the trial from its true issue and predicate a new and collateral issue upon his cross-examination of the witness. And so here the question whether this witness was sober or not, or whether he had drunk liquor of any kind, was not an issue in the case. The plaintiff could not make it an issue except by proper pleading. His right was one of cross-examination. Such privilege did not extend to him the right to predicate a new issue upon such cross-examination. The sobriety of Foster might have had a bearing, and probably would, upon his capacity to exercise care in his driving. But that was an issue in the main case. It was pertinent to the question of the defendant's negligence. The plaintiff could not split his main case and reserve a part of it to be used under guise of rebuttal. He had a right to avail himself of the ordinary methods of impeachment. He was entitled to impeach the witness by cross-examination if he could. But the methods of impeachment are well established. Such impeachment may be had by a showing of general reputation as to character. It may also be shown by proof of contradictory statements made by the witness at a specified time and place. It may not be made by predicating an issue of fact upon the cross-examination of the witness. This witness was a party defendant. His admissions, therefore, so far as pertinent to the issues in the case, were admissible as substantive evidence. But alleged admissions by him not pertinent to the issues in the case are not admissible as impeaching testimony. Alleged admissions made by him which were pertinent to the issues were admitted in evidence as against him. The plaintiff offered evidence tending to contradict the witness as to whether he had thrown away a bottle and as to whether he had drunk any liquor. This evidence was rejected on the ground that it was not proper rebuttal as to any issue in the case and on the ground that it was not admissible for the purpose of impeachment. The issue to which it was directed, was purely collateral. We hold that the cross-examination was permissible, as such. But its exclusion by motion worked no prejudice to the plaintiff. The result of the cross-examination was adverse to him. He took that risk when he entered the field. He was hurt by the answers of the witness. He was not hurt by their later exclusion.

■ IV. The plaintiff offered evidence of certain admissions made by Foster in conversation with other parties that did bear upon the proper issues of the case. These admissions were held admissible as against Foster, but inadmissible as against the Hutchinson Ice Cream Company. The appellant complains of the restriction thus put upon the evidence. Such is the established rule in this state. Cox v. Des Moines Electric Light Co., 209 Iowa 931. If it were otherwise, the record discloses that the ruling worked no prejudice to the plaintiff. The verdict rendered was for both defendants. The evidence thus introduced was not effective with the jury even against Foster. The conclusion is therefore quite inevitable that it could not have been effective as against the Hutchinson Company, if it had been deemed admissible. In no event could the Hutchinson Company be held unless Foster, as its employee, was likewise liable. See Lahr v. Chicago & N. W. R. Co., 212 Iowa 544.

■ Finally the appellant complains of an instruction by the court in the statement of the issues to the jury. In such statement the court required the jury to find, among other allegations, that Foster was the employee of the Hutchinson Ice Cream Company. The argument is that there was no issue on this question, and that it was therefore erroneous to submit it as an issue to the jury. In a practical sense it is true that there was no dispute on that subject. In a technical sense the allegation of the plaintiff in that regard was put in issue by a general denial. Certain admissions made by the defendants in their answer did not apply to this allegation. It was therefore technically denied. It was requisite, therefore, in a legal sense that it be proved, though no one disputed it as a witness. The instruction was correct. If it were otherwise, no possible prejudice could have resulted to the plaintiff because thereof.

We reach the conclusion that the record discloses no prejudicial error, and that the judgment below must accordingly be—Affirmed.

WAGNER, C. J., and STEVENS, FAVILLE, DE GRAFF, ALBERT, KINDIG, and GRIMM, JJ., concur.