ABER KLAAREN, Appellant, v. HENRY G. SHADLEY, Appellee.

No. 41653.

MARCH 14, 1933.

Thomas J. Bray and C. Ver Ploeg, for appellant.

Devitt, Eichhorn & Devitt, for appellee.

ANDERSON, J.—The accident, which is the subject of this controversy, happened about 6 o'clock P. M. on the 11th day of February, 1931, at approximately the east corporation line of Pella. It appears that the plaintiff-appellant, Aber Klaaren, was riding in the front seat of a model T Ford coach, which was driven by his brother-in-law, Lewis Van Roekel, with his sister, Mrs. Van Roekel, occupying the rear seat. They were driving east out of the town of Pella, and it appears that at the corporation line there is quite an abrupt

curve in the highway known as No. 63. This highway was paved eighteen feet wide. It appears that one cannot see around the curve coming from the east. There is a large dwelling situated upon the inside corner of the curve, and a slight raise in the ground at that point. The driver of the Van Roekel car testifies that when he was about 200 or probably 275 feet west from the curve, and traveling toward the curve, he could tell by the lights that there were two cars approaching the curve; that they appeared to be going at a rapid rate of speed, and were coming around the curve toward the Van Roekel car side by side. When he saw the cars coming he pulled to the south or right side of the pavement, and was traveling about 25 miles an hour. One of the approaching cars was that of the defendant, Shadley, and was being driven by him. The other car was being driven by one Van Zetten. The Shadley car was on the right or north side of the highway, and near the edge of the pavement. This witness proceeds: "They were not side by side when I first saw them. The Shadley car was on the north side of the pavement over toward the north edge of the pavement. There was no car in front of it. When the cars got past the curve the Shadley car was still on the north side of the pavement. The Van Zetten car was trying to pass the Shadley car so the car came between us. I think it was all of 100 feet from me when I first observed the Van Zetten car attempting to pass the Shadley car. The Van Zetten car had just room enough to get between us. It whirled in front of the Shadley car so it would avoid running into me. All I can say is that he missed me. I don't know whether the Van Zetten car hit the Shadley car or not. I couldn't see how much space there was between me and the Shadley car when the Van Zetten car went between us. The fact is that immediately after the Van Zetten car got through, the two cars got into the collision. I should judge we came together 125 feet from the curve. There wasn't any car in front of the Shadley car on the north side of the road until the Van Zetten car pulled in ahead of it immediately prior to the collision. My car was the only one coming from the west and it was on the south side of the road. I brought a suit for damages against Van Zetten and Mr. Shadley over in Marion County, and signed and swore to the petition, Exhibit 1. In that petition I stated that the Van Zetten and Shadley cars were traveling in a westerly direction and that Van Zetten attempted to pass the automobile owned and driven by the said Henry Shadley, and that there was insufficient space between the car of Henry Shad-

ley, and that of the car then and there owned and driven by the plaintiff, Lewis Van Roekel, and to avoid said accident the automobile of said plaintiff was forced to the right off the public highway, and that the said Van Zetten drove his car in a dangerous and negligent manner without due regard to plaintiff's safety, and at an excessive rate of speed. It had to turn to miss us. After the Van Zetten car passed between us and whirled around in front of the Shadley car, the Shadley car came across the pavement south and into collision with my car, throwing my wife and myself out of the car and severely injuring Mr. Klaaren. Both my car and the Shadley car stopped immediately after the collision and were standing up on their wheels. The Shadley car was bumped into me sidewise."

The foregoing is substantially all of the testimony of the only eye witness to the accident.

There was some offered testimony excluded by the court as to the rate of speed of the two cars approaching from the east, and error is assigned by reason of the court's ruling excluding the same, but we do not think there was any error in sustaining objections to the proffered testimony. At least the exclusion thereof was not prejudicial.

There is some testimony as to statements made by the defendant, Shadley, after the accident. Mr. Henry Kersbergen testified: "I believe Mr. Shadley said that Van Zetten had run in between them and hooked him."

Lester Liter testified: "Shadley told me that Van Zetten cut in front of him and that he tried to keep out of his road. He said he cramped his wheels and evidently they locked and shot across the road."

There were some rubber marks on the pavement the next morning, starting about two feet from the north edge of the pavement and projecting across the pavement to the southwest, indicating that brakes had been applied severely upon the car that made the marks, and that it was the defendant's car. The marks extended across the pavement to the point of collision.

Max Dixon testified: "That he talked to Shadley as to what happened just before the accident. Shadley said they were driving from Oskaloosa to Des Moines and had been passing the car off and on all the way from Oskaloosa. The car would pass them on the way until they came to this curve into Pella, and Shadley said that this car, this new Ford (Van Zetten's car) started to cut around

him and he pulled out to keep from getting hit, pulled to the right. He said he saw that he was going into the ditch, thought he was, and he cramped in the other way. Said he thought his wheels must have locked and he went to the other side of the road."

The foregoing is substantially all of the material evidence in the record, except as to the injuries of the plaintiff resulting from the accident, and his damages.

At the close of the plaintiff's testimony the court sustained a motion to direct a verdict for the defendant. The motion was based upon several grounds, the substance of which were that the injuries complained of were not caused by any negligence of the defendant; that the evidence fails to establish, by the necessary preponderance, the claims of plaintiff as to the negligence of the defendant, and that the evidence establishes that the defendant was not guilty of any act of negligence that was the proximate cause of the accident; that the evidence affirmatively shows that the Van Zetten car attempted to pass the defendant's car on a curve; that the defendant turned out to avoid being struck by the passing car, put on his brakes, and tried to stop; that the defendant was on the right side of the road where he had a right to be, and that he was not guilty of any act of negligence for which he is liable under the law.

As we have indicated, the errors relied upon by appellant for reversal are: (1) The court erred in excluding the offered testimony of Lewis Van Roekel in reference to the speed of the cars of the defendant and Van Zetten as they approached the Van Roekel car immediately prior to the accident; and (2) the court erred in sustaining the defendant's motion and directing a verdict.

Where a witness is asked to give the speed of a car his competency must first be established. It must then be established that he was in a position to judge the speed, so that his evidence would be of some value. Teufel v. Hays, 197 Iowa 340, 196 N. W. 1022; Judd v. Rudolph, 207 Iowa 113, 222 N. W. 416, 62 A. L. R. 1174.

Under the circumstances existing in this case, and the situation and position of the witness, Van Roekel, it is apparent that had he been qualified and permitted to testify as to the speed of the approaching cars, such testimony, under the existing circumstances, would have been a mere conjecture or guess. The physical facts, as established by the record, show that defendant could not have been guilty of excessive speed immediately before or at the time of the

accident. His car was under control until the Van Zetten car passed him and whirled in front of his car. The defendant then did what any ordinary and prudent man would have done; applied his brakes, tried to stop his car, and tried to avoid being thrown into the ditch, and in doing so his car skidded across the highway and sideswiped the Van Roekel car. It must be borne in mind that the Van Zetten car, soon after it passed the Shadley car and whirled in front of it, turned over on the highway and slid practically 100 feet or more. There is abundant evidence in the record that Van Zetten was driving at an excessive speed, and that he attempted to pass and did pass the Shadley car on a curve, and that his negligence was the direct and proximate cause of the accident and resulting injury to plaintiff. The speed of the Shadley car, under the physical facts as detailed, could not have been excessive, and could not and would not have contributed to the accident in any way had it not been for the gross negligence of Van Zetten.

It is true that the acts of two or more persons concurring in, contributing to, and causing an accident, make the actors jointly and severally liable, but negligent acts must concur to effect that result, and in the record before us there is absolutely no evidence of any negligence or want of care on the part of the defendant.

The plaintiff really bases his right to recover on the ground that the defendant and Van Zetten were racing immediately before and at the time of the accident, and that the rejected testimony as to the speed of the defendant's car was offered to establish the fact of racing in connection with claimed admissions of the defendant, Shadley. But we think such offered testimony, if admitted, would have failed to prove this issue. Glass v. Hutchinson Ice Cream Co., 214 Iowa 825, 243 N. W. 352, 354; Thomas v. Rasmussen, 106 Neb. 442, 184 N. W. 104.

As said by this court, speaking through Judge Evans in the Glass v. Hutchinson case:

"It is conceded, as a matter of law, by the defendant, that if its truck was engaged in a race upon the highway with another automobile and that a collision occurred as a result of the pressure or excitement of such race, then both parties to the race would be liable for the resulting collision. * * * Manifestly the court might properly say in its discretion that remote evidence will not be first received.

nor received at all, unless there be evidence of such racing immediately preceding the accident."

In the cited case a witness testified that he did not see the approaching cars until about two seconds before the collision occurred, which happened in the nighttime. He testified that in his opinion they were traveling from sixty to seventy miles an hour. He also testified that he had never before tried to estimate the speed of cars approaching in the night. The opinion of Judge Evans proceeds:

"If these cars were traveling at that rate of speed at the time, it might be deemed evidence of racing. Does this evidence have any probative value? We think not. It was a mere guess on the part of the witness, and could have been fixed at any figure he chose. * * * The circumstances under which Alborn [the witness] estimated the speed afforded no opportunity whatever for such estimate. To make decision of a case turn on such evidence would be farcical indeed. It must be said, therefore, that there was no evidence of any racing within the distance of three-quarters of a mile preceding the accident, and that the court properly charged the jury to that effect."

The facts in the cited case are almost identical with the case at bar.

The error assigned therefore, upon the ruling of the court in the rejection of the offered testimony, is not sustainable.

The error assigned based upon the ruling of the court on the motion for the directed verdict is based: (a) Upon the rejection of the offered testimony as to speed. (b) That the record established that the cars of the defendant and Van Zetten were engaged in a speed contest at the time of the occurrence of the collision. (c) That the record established negligent acts on the part of the defendant and Van Zetten, which concurred in and contributed in causing the accident and resulting injuries to plaintiff. (d) That in passing upon the motion for a directed verdict the plaintiff was entitled to have the evidence construed most favorably to him, and that under the pleadings and evidence a jury question was presented.

We have answered most of these propositions in the preceding discussion. It is true that, in passing upon a motion for a directed verdict, the plaintiff is entitled to have the evidence construed most favorably to him. This rule is too well established to require citations. By giving to the plaintiff all the benefit he is entitled to,

under this rule, we do not think that the plaintiff established, by his evidence, a case for the jury. There is no evidence of racing and there is likewise no evidence of any negligence on the part of the defendant, which caused, contributed to, or concurred in, the accident. Had the case been submitted to the jury upon the record as made, the jury would have had to guess or conjecture as to what act or failure to act on the part of the defendant caused or contributed to the accident, or concurred with the negligence of Van Zetten, and this they should not be permitted to do. We hold that there is no reversible error in the record, and the ruling of the trial court is accordingly affirmed.—Affirmed.

KINDIG, C. J., and STEVENS, MITCHELL, and KINTZINGER, JJ., concur.