Rose Williams *vs.* James E. Nelson & another.
Barnett Williams *vs.* Same.

Suffolk.    March 28, 1917. — September 13, 1917.

Present: Rugg, C. J., Braley, De Courcy, Crosby, & Pierce, JJ.

*Insurance,* Liability.    *Constitutional Law.    Superior Court.    Equity Juris-
    diction,* To reach and apply casualty insurance to satisfaction of judgment
    for bodily injury or death.    *Supreme Judicial Court.    Motor Vehicle.
    Words,* "Driven or manipulated," "Loss or damage," "Bodily injury."

St. 1914, c. 464, is constitutional.    Following *Lorando* v. *Gethro, ante,* 181.

The Superior Court, under its general chancery jurisdiction, including creditors' bills
    to enforce the collection of judgments, and under R. L. c. 159, § 3, has jurisdic-
    tion of suits in equity brought under St. 1914, c. 464, by those who have ob-
    tained judgments for bodily injury or death by accident against defendants
    who were insured against such loss or damage when the right of action arose,
    to reach and apply the insurance money to the satisfaction of such judgments.

The exclusive jurisdiction in equity conferred upon the Supreme Judicial Court
    by R. L. c. 159, § 2, is confined to matters not within the general principles of
    chancery jurisdiction and cognizable under statutes which do not provide ex-
    pressly that the Superior Court also shall have jurisdiction.

In a suit in equity under St. 1914, c. 464, to reach and apply the money recoverable
    under a policy of casualty insurance to the satisfaction of a judgment obtained
    by the plaintiff against the insured for injuries sustained by being hit by an auto-
    mobile of the insured, it appeared that the policy contained the following clause:
    "This policy does not cover loss from liability for, or any suit based on, injuries
    or death caused by any automobile (1) while driven or manipulated by any per-
    son under the age fixed by law or under the age of sixteen years in any event."
    It appeared also that up to a short time before the plaintiff was injured the auto-
    mobile of the insured was being driven by a son of the insured less than sixteen
    years of age, the insured sitting by his side, that the father "suddenly leaned
    over to the left and took the wheel from his son, telling him to get out of the
    way," that "the son shrunk back in the seat, and the father thereafter guided
    the course of the automobile and entirely controlled its operation so far as possi-
    ble so to do in the position in which he was, and the son thereafter did nothing
    except to blow the horn," that under those conditions the automobile crossed
    parallel street railway tracks, passed in front of a street railway car, and then,
    turning to the right, proceeded between the street railway car and the sidewalk
    and ran into the plaintiff, who was standing on the street for the purpose of
    taking the car.    The trial judge found that the insured "was not in a position
    in the automobile at the time of the accident so that he could properly drive or
    manipulate the automobile, and he was not in a position in which he could
    readily prevent the accident by applying the levers or pedals provided for stop-
    ping the automobile."    *Held,* that a finding was warranted that at the time of
    the plaintiff's injury the automobile was "driven or manipulated," within the
    meaning of those words in the policy, by the insured and not by his son.

In the same suit it was *held* that the case was one within St. 1914, c. 464, which is applicable to every contract of insurance whereby one "is insured against loss or damage on account of the bodily injury or death by accident of any person," the words "loss or damage" including a case where the insured has been held responsible to the extent of the rendition of a judgment against him, although no payment has been made on the judgment.

The words of St. 1914, c. 464, quoted above do not include "loss or damage" suffered by a husband by reason of the physical injury of his wife, such consequential financial loss not being a "bodily injury" within the meaning of the statute.

TWO BILLS IN EQUITY, filed in the Superior Court on September 5, 1916, the first by Rose Williams, and the second by Barnett Williams, her husband, the plaintiffs respectively having recovered judgments against the defendant Nelson for bodily injuries to the plaintiff Rose and alleged loss or damage arising therefrom, seeking under St. 1914, c. 464, to have the insurance money under a policy of casualty insurance issued to the defendant Nelson by the defendant United States Fidelity and Guaranty Company applied to the satisfaction of the said judgments.

The suits were heard together by *Jenney*, J. The material findings of the judge are stated in the opinion. The defendant insurance company asked the judge to make the following findings:

"1. The defendant requests that the court shall find that at the time of the accident the automobile was being driven or manipulated by James H. Nelson, a minor under the age of sixteen years.

"2. The conditions precedent of the policy have not been complied with or satisfied.

"3. James E. Nelson was not in a position in the automobile at the time of the accident so that he could have prevented the accident by applying the levers or pedals provided for stopping the automobile.

"4. James E. Nelson was not in a position in the automobile at the time of the accident so that he could properly drive or manipulate the automobile."

The judge stated that he had made the fourth finding requested and had made the third in substance. The first and second requests he refused. He ordered that a decree should be entered directing the defendant insurance company to pay to the plaintiff Rose Williams the amount of the judgment in her favor with interest, and that a similar decree should be entered in the suit of Barnett Williams.

Later by order of the judge final decrees were entered in accordance with the findings and orders made by him. The defendant insurance company appealed, the evidence being reported as taken by a commissioner appointed under Equity Rule 35.

R. L. c. 159, § 2, is as follows: ".The Supreme Judicial Court shall have original and exclusive jurisdiction in equity of all cases and matters of equity which are cognizable under the provisions of any statute and are not within the jurisdiction conferred by the provisions of the preceding section, unless a different provision is made; and the Superior Court shall have like original and exclusive, or like original and concurrent, jurisdiction only if the statute so provides."

*H. V. Cunningham,* (*F. M. Murphy* with him,) for the defendant insurance company.

*C. R. Cabot,* (*J. E. Hannigan* with him,) for the plaintiffs.

RUGG, C. J. These are suits in equity under St. 1914, c. 464. That act in terms permits a judgment creditor of one insured by contract of casualty insurance against loss or damage on account of bodily injury or death by accident of any person arising from causes for which the insured is responsible, such judgment having been recovered for a cause covered by the contract of insurance, to proceed in equity against the insured and the insurer to reach and apply the insurance money to the satisfaction of the judgment.

1. The statute has been assailed as contrary to the Constitution. But that contention has been held untenable in *Lorando* v. *Gethro, ante,* 181, just decided, and need not be discussed further. This case upon that point is governed by the authority of that decision.

2. The Superior Court has jurisdiction of the suits. That court has general chancery jurisdiction. It has jurisdiction by the express terms of R. L. c. 159, § 3, of special equitable suits by creditors to reach and apply property of a debtor which cannot be reached to be attached or taken on execution in actions at law. Creditors' bills brought by those who have obtained judgments to enforce their collection is a well recognized branch of equity. *Rioux* v. *Cronin,* 222 Mass. 131, 137. Suits under the present statute are sufficiently similar to these two classes of cases, of which the Superior Court plainly has jurisdiction, to be also within its jurisdiction. When an existing method of relief in equity already within the jurisdiction of the Superior Court is enlarged or

modified, without creating a new branch of equity, it is cognizable still by that court. The instant statute is a simple amplification of relief under the well known equitable process of creditor's bill or equitable attachment.

The exclusive jurisdiction in equity conferred upon the Supreme Judicial Court by R. L. c. 159, § 2, is confined to matters not within the general principles of chancery jurisprudence cognizable under statutes which do not expressly provide that the Superior Court also shall have jurisdiction. It does not govern the present proceedings. Cases like *Baldwin* v. *Wilbraham*, 140 Mass. 459, and *Langmaid* v. *Reed*, 159 Mass. 409, which related to newly created special statutory subjects of equity not known to general chancery jurisprudence, are not relevant.

3. The policy by which the judgment debtor was insured contained this clause: "B. This policy does not cover loss from liability for, or any suit based on, injuries or death caused by any automobile (1) while driven or manipulated by any person under the age fixed by law or under the age of sixteen years in any event. . . ." The judgments here in question were recovered for injuries caused to the female plaintiff by being hit by an automobile of the insured. The finding of the judge in this respect is that, although before the accident which caused the injuries to the female plaintiff, hereafter called the plaintiff, a son of the principal defendant under sixteen years of age had been driving the automobile, yet just before the automobile struck the plaintiff, the father "suddenly leaned over to the left and took the wheel from his son, telling him to get out of the way." Apparently at this moment the automobile was thought by the father to be in a position of some danger either as being on the wrong side of the road or as likely to be driven off the road. The further finding is that "The son shrunk back in the seat, and the father thereafter guided the course of the automobile and entirely controlled its operation so far as possible so to do in the position in which he was, and the son thereafter did nothing except to blow the horn. The automobile crossed both street railway tracks, passed in front of the street car, and then, turning to the right, proceeded between the street car and the sidewalk and hit Rose Williams who was on the street for the purpose of taking the street car. The operation of the car was entirely controlled by the father while crossing both street

railway tracks, while passing in front of the street car and turning
to the right on Massachusetts Avenue, and while proceeding on
Massachusetts Avenue for a distance of at least the length of the
street car, but Nelson was not in a position in the automobile at
the time of the accident 'so that he could properly drive or ma-
nipulate the automobile,' and he was not in a position in which he
could readily prevent the accident by applying the levers or pedals
provided for stopping the automobile."

This finding of fact is amply supported by evidence, which need
not be reviewed. It must be accepted as true. As matter of law
it supports recovery under the policy. The dominating mind in
control of the operation of the automobile and regulating its
movement at the moment of impact with the plaintiff, was that
of the father and not of the son. Although the distance travelled
after the father took manual guidance of the automobile was
comparatively short, perhaps not more than fifty or seventy-five
feet, and the conditions of his driving were unfavorable to complete
and skilful direction of its course, yet his initial choice was to
drive on rather than to stop or pursue some other line of action.
That the son blew the horn and had brought the machine into an
improper position does not derogate from the paramount control
of the father over it, nor prevent him from being, at the time of the
injury to the plaintiff, the one by whom it was "driven or manipu-
lated," within the meaning of those words in the policy.

The finding that the father's position was such that he could not
readily prevent the accident by stopping the car is not decisive.
That is not equivalent to a finding that it was impossible in reason
for him to have stopped the car after he assumed control of its
movements and before the plaintiff was injured. Moreover, the
fundamental fact is that he was driving and that he elected to
drive under the conditions which confronted him.

4. The language of the statute renders it applicable to every
contract of insurance whereby one "is insured against loss or dam-
age on account of the bodily injury or death by accident of any
person." The words "loss or damage," in this connection in the
light of their context, and the manifest purpose of the statute, in-
clude a case like the present where the insured has been held re-
sponsible to the extent of the rendition of a judgment against him,
although no payment has been made on the judgment.

5. The husband of the female plaintiff recovered judgment against the insured for the loss or damages sustained by him because of the physical injury to his wife. The question is whether this judgment is for the "bodily injury . . . of any person." Bodily injury imports harm arising from corporeal contact. In this connection "bodily" refers to an organism of flesh and blood. It is not satisfied by anything short of physical, and is confined to that kind of injury. It does not include damage to the financial resources of the husband arising from a bodily injury to his wife. *Hey* v. *Prime,* 197 Mass. 474, and cases cited. *Keating* v. *Boston Elevated Railway,* 209 Mass. 278, 282. Personal injury in other connections has been held to be of more comprehensive significance. *Mulvey* v. *Boston,* 197 Mass. 178, 180. *Madden's Case,* 222 Mass. 487, 492. But "bodily injury . . . of any person" cannot reasonably be held to include the kind of loss suffered by the husband.

It follows from what has been said that in the suit by the wife the entry must be decree affirmed with costs, and in that by the husband the decree must be reversed, and in accordance with St. 1913, c. 716, § 2, a new decree entered dismissing his bill with costs.

*So ordered.*