**BURSTEIN v. UNITED STATES LINES CO.**
**No. 123.**

Circuit Court of Appeals, Second Circuit.

Feb. 10, 1943.

Lester Lyons, of New York City (Saul Sperling, of New York City, on the brief), for appellant.

Vernon S. Jones, of New York City (Kirlin, Campbell, Hickox, Keating & McGrann and Raymond Parmer, all of New York City, on the brief), for appellee.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The question involved herein is whether Rev.Stat. § 4283A, 46 U.S.C.A. § 183b, forbidding the owner of a vessel to require a shorter time than six months for notice of, and one year for suit upon, "claims for loss of life or bodily injury" of its passengers, applies to a claim by a husband for loss of services and medical expenses for injury to his wife.[1] Though the district court held the wife's claim for her own injuries to be within the protection of the statute, it decided otherwise as to the husband's consequential claim for damages and granted a summary judgment dismissing his complaint. The wife's claim was left pending. D.C.S.D.N.Y., 43 F. Supp. 226.

On August 21, 1940, plaintiff's wife, traveling with him on defendant's "S. S. Washington" from Los Angeles to New York, slipped on the stairs on shipboard and sustained injuries for which she and he now claim $25,000 and $5,000 respectively. Their joint action was begun on May 7, 1941, in the state court and was later removed to the district court by defendant. In the complaint appellant stated his claim to be for loss of "the services, society and companionship" of his wife and for expenses of her cure. Defendant pleaded lack of timely notice, as well as of timely suit, as required by the ticket contract, and supported its motion for summary judgment by affidavits, which included a photostatic copy of the ticket. This was a lengthy document signed by the wife, covering passage for both; and on its back appeared a paragraph providing that where § 4283A "shall apply," notice of claims for loss of life or bodily injury might be given within six months and suit started within a year, but that as to all other claims (except for loss of life, which was specially covered), notice must be given within fifteen days and suit begun within six months after landing. There is no dispute as to the essential facts, though appellant does contend that he was not bound by, or chargeable with notice of, the ticket provisions—an issue as to which decision is unnecessary under our view of the statute.

Defendant contends that the statute in any event does not apply to a coastwise voyage, in view of the provision making it applicable to owners of vessels "transporting passengers or merchandise or property from or between ports of the United States and foreign ports." In other words, defendant relies on a quite literal reading of the word "between," which would eliminate or make tautologous the words "from or." But seemingly something more than merely foreign voyages was intended by these additional words, as the Supreme Court pointed out in Knott v. Botany Worsted Mills, 179 U.S. 69, 75, 21 S.Ct. 30, 32, 45 L.Ed. 90, in dealing with the same phrase (except for the omission of "passengers or") in § 1 of the Harter Act of 1893, 46 U.S.C.A. § 190. The Court there said that the phrase was "slightly elliptical; but it appears to us to have exactly the same meaning as if the ellipsis had been supplied by repeating the words

[1] Rev.Stat. § 4283A(a): "It shall be unlawful for the manager, agent, master, or owner of any sea-going vessel (other than tugs, barges, fishing vessels and their tenders) transporting passengers or merchandise or property from or between ports of the United States and foreign ports to provide by rule, contract, regulation, or otherwise a shorter period for giving notice of, or filing claims for loss of life or bodily injury, than six months, and for the institution of suits on such claims, than one year, such period for institution of suits to be computed from the day when the death or injury occurred."

Sub. (b) excuses failure to give notice under certain circumstances, as where the owner or master of the vessel had knowledge of "the injury, damage, or loss," and was not prejudiced. Sub. (c) provides that if "a person who is entitled to recover on any such claim is mentally incompetent or a minor," or if the action is for wrongful death, any time limitation shall not apply until appointment of a legal representative, if made within three years after the date of such death or injury.

'ports of the United States,' so as to read 'any vessel transporting merchandise or property from ports of the United States, or between ports of the United States and foreign ports.'" True, the Court's actual decision was only that the Harter Act governed bills of lading for goods shipped in a foreign vessel from a foreign to a domestic port. The quoted statement cannot be considered mere dictum, however, for its reasoning was part of the assumption by which the result was reached. That § 3 of the Harter Act, 46 U.S.C.A. § 192, was differently worded (though §§ 2 and 4, 46 U.S.C.A. §§ 191, 193, are like § 1) was not considered important, just as we do not think it enlightening here that in another statute passed in 1936, Rev.Stat. § 4283B, 46 U.S.C.A. § 183c, Congress avoided the ellipsis. The reading is one which gives sense to the entire expression. See The Tampico, D.C.N.D.Cal., 151 F. 689. When Congress passed the present statute in 1935 employing the language of the Harter Act, we should give it the same reading as that Act has had, particularly as there seems no conceivable reason to except from this reasonable regulation domestic commerce, usually so carefully protected and, at least as to carriage of goods, so fully regulated. Cf. Robinson on Admiralty, 1939, 495–503. Certainly the circumstances under which the statute was passed, as detailed below, suggest no such differentiation.

██ The more important question, in the light of the decision below, is as to the meaning of "bodily injury" with respect to the husband's claim. These words are at best a metaphorical or shorthand expression for some more complicated idea than is directly revealed by them; obviously no one has a claim for such an injury in the sense that he may demand and receive it, and no one contends for any such purely literal meaning.. It must be a claim for something else, for something which a lawsuit will produce, to wit, the money damages which the law accords for the injury. A further natural step is to read "for" as "on account of" or "by reason of," Sharkey v. Skilton, 83 Conn. 503, 77 A. 950, and the whole phrase then becomes "claims for damages legally recoverable by reason of bodily injury sustained by a passenger." Finally it may be easily concluded that all such damages are intended. That, indeed, appears to be conceded so far as the injured passenger's own dam-

ages are concerned; but a different result is urged as to those damages, even though flowing in natural consequence from the injury, which are formally sued for by another, no matter how closely identified he is in practical fact with the person injured. Under all the circumstances, balking at this last step may be thought to yield a rather odd limitation on an otherwise broad generalization.

Defendant, however, asserts that the phrase has a technical legal meaning which must control here as being presumably the meaning intended by Congress. But neither branch of the argument seems well founded; indeed, their converse appears the better supported. The statute was in fact enacted under circumstances and with a haste which go far to demonstrate that no such sophisticated precision of meaning could have been in mind. The provision in question is but a part of a more complete statute passed in consequence of the public horror at the loss of life occasioned by the burning of the "Morro Castle," en route from Havana to New York. As stated on the floor of Congress, the Act was designed to give greater redress for losses such as were occasioned by that fire and by the loss of the "Mohawk" a little later. The main features of the Act were two additions to the old limitation of liability statute of 1851: a provision for a minimum liability on the part of the shipowner for "the entire loss of life or personal injuries" caused without the fault or privity of the owner of at least $60 per ton of the vessel's tonnage, and a provision that "in respect of loss of life or bodily injury" the actual privity or knowledge of the master or the superintendent or managing agent should be deemed conclusively the privity or knowledge of the owner. See New York & Cuba Mail S. S. Co. v. Continental Ins. Co., 2 Cir., 117 F.2d 404, certiorari denied 313 U.S. 580, 61 S.Ct. 1103, 85 L.Ed. 1537, and the articles cited at page 408 of 117 F.2d, especially Springer, Amendments to the Federal Law Limiting the Liability of Shipowners, 11 St. John's L.Rev. 14. The original bill dealt only with amending the liability statute. Introduced by Senator Copeland on a Tuesday in August just before the close of the 74th Congress, 1st Session, it reappeared in the Senate on Thursday with amendments including the legislation here involved, was passed there at once by unanimous consent, and by the

House in like fashion on Friday, and received the signature of the President on the following Thursday, August 29, 1935. 49 Stat. 960, Rev.Stat. §§ 4283 (as amended), 4283A, 46 U.S.C.A. §§ 183, 183a, 183b; 79 Cong.Rec. 13759, 14109, 14329.[2]

The next year it was found necessary to amend and clarify the amendment to the limitation statute, to remove the word "actual" appearing before "privity,"[3] and to provide new legislation forbidding contracts or regulations which might attempt to relieve the shipowner of liability wholly or partially, "in the event of loss of life or bodily injury," by negligence of his servants or "lessen, weaken, or avoid the right of any claimant to a trial by court of competent jurisdiction." Act of June 5, 1936, 49 Stat. 1479, Rev.Stat. §§ 4283 (as amended) 4283B, 46 U.S.C.A. §§ 183, 183c. While § 4283A was left untouched, considerable annoyance was expressed at the continued practice of shipowners of trying to contract against negligence or to enforce arbitration of all claims and the new legislation was proposed in order to put a stop to the practice. 80 Cong.Rec. 8437, 8438, 8575. Advantage was taken of the occasion to substitute "bodily injury" for "personal injuries" in the limitation provision, thus making the phrase uniform in the seven times in which it is employed in these statutes. No suggestion appears in the debates or from the commentators (above referred to) that this particular rewording meant any change in the limitation statute. Seemingly it meant only additional emphasis of the legislative concern, induced by the "Morro Castle" disaster, for the safety of passengers at sea. Since that concern did not direct itself immediately to property losses, it was quite natural that the legislation should not touch loss of personal effects or baggage. It does not follow that a like unconcern was held for a loss so consequentially dependent on the injury as that of the wife's society and companionship to the husband.

All this history tends to show, we think, not the particularization of terms which defendant urges, but an attempt, and here a hasty attempt, to insure more adequate and complete protection of the passengers' rights. A careless choice of language appears in the expression lifted bodily from the Harter Act, as previously explained, since it includes a now pointless reference to transportation of "merchandise and property." The later provision for excuse of failure to give notice where there is knowledge of "the injury, damage, or loss" may suggest an attempt at greater inclusiveness; at the least it shows again the lack of precision in definition. Inclusive, also, is the preservation of trial rights "of any claimant" on the questions of liability or measure of damage "for such loss or injury" made in the 1936 statute. Rev.Stat. § 4283B.

Further, there seems to be no reason for such a distinction as is here urged and the curious consequences which it would produce. Since the statute is made applicable to claims by a legal representative in case of a passenger's death, it is clear that no thought of reserving it for the exclusive personal benefit of the person injured was entertained. The distinction is particularly inexplicable when applied to husband and wife because in a substantial number of states the antique remedy of damages for loss of consortium has been abolished by the Married Women's Acts, Marri v. Stamford St. R. Co., 84 Conn. 9, 78 A. 582, 33 L.R.A.,N.S., 1042, Ann.Cas.1912B, 1120; Whitcomb v. New York, N. H. & H. R. Co., 215 Mass. 440, 102 N.E. 663; cases collected 21 A.L.R. 1517, 1527, 133 A.L.R. 1156, 1162; 16 Col.L.Rev. 122, and recovery even for medical expenses is in the wife. Cassidy v. Constantine, 269 Mass. 56, 168 N.E. 169, 66 A.L.R. 1186, with note at 1189, 1194; Ginsberg v. Ginsberg, 126 Conn. 146, 9 A.2d 812; Warren v. City of Bridgeport, 129 Conn. 355, 28 A.2d 1, 4; Conn.Gen.Stat., Cum.Supp.1939, § 1410e. That imaginary, but potent, line separating New York from New England might acquire even greater strength if catching a defendant steamship company in Massachusetts or Connecticut can have the increased advantage thus suggested.

Finally there is not agreement in the existing case law on a precise and limited

---

2 Of course, legislation amending the limitation statute had been pending throughout the session; the earlier Sirovich bill had provided a minimum of $100 per gross ton for claims for loss of life or personal injuries—as well as an additional $50 for property loss, a provision which disappeared in the later legislation.

Sprague, Limitation of Shipowners' Liability, 12 N.Y.U.L.Q.Rev. 568, 597.

3 Springer, in the article cited in the text, suggests that this word was inserted by shipping interests, without appreciation of its significance by proponents of the legislation.

definition of "bodily injury." True, defendant can cite a considerable number of cases, particularly from the law of insurance, or of the statute of limitations, supporting its contention; but many counter citations are available. Thus the more inclusive meaning is given the phrase in Antichi v. New York Indemnity Co., 126 Cal.App. 284, 14 P.2d 598; Franklin v. Georgia Cas. Co., 225 Ala. 58, 141 So. 702; American Motorists Ins. Co. v. Kopka, 88 N.H. 182, 186 A. 335 (and compare also Lumbermens Mut. Cas. Co. v. Yeroyan, 90 N.H. 145, 5 A.2d 726); and Kula v. Jersey Mut. Cas. Ins. Co., 153 A. 265, 8 N.J.Misc. 929; while the limited meaning is supported in U. S. Fidelity & Guaranty Co. v. Shrigley, D.C.W.D.Ark., 26 F.Supp. 625; Cliff v. Seligman & Latz, 6 Cir., 38 F.2d 179; American Fidelity & Cas. Co. v. Mahon, 170 Md. 573, 185 A. 330, 105 A.L.R. 1200; Brustein v. New Amsterdam Cas. Co., 255 N.Y. 137, 174 N.E. 304; and Kraut v. Cleveland Ry. Co., 132 Ohio 125, 5 N.E.2d 324, 108 A.L.R. 521. The trends, if not the confusion, of the cases—when considered apart from the purpose towards which interpretation is being directed—are well shown in the observation in 105 A.L.R. 1205 that "without exception" the courts have given the protection of insurance policies indemnifying for "legal liability for bodily injuries or death" to a parent or husband suffering consequential damages arising from bodily injuries sustained by the child or spouse, compared with the observation in 108 A.L.R. 525 that "the few cases which have considered the question have uniformly held" actions to recover consequential damages for physical injuries suffered by another not to be for "bodily injuries" within the meaning of statutes of limitation.

■■ The need of keeping in mind the end result of the interpretation is illustrated by two Massachusetts cases. In Williams v. Nelson, 228 Mass. 191, 117 N.E. 189, Ann.Cas.1918D, 538, particularly relied upon by defendant, the court held the term "bodily injuries" not applicable to consequential injuries under the Massachusetts statute requiring compulsory automobile insurance for such injuries. That this was only an example of the usual strict construction accorded a severely compulsory statute is shown by the later limitation of the decision in Cormier v. Hudson, 284 Mass. 231, 187 N.E. 625, dealing with the

extraterritorial effect of an insurance policy covering liability for damages "on account of bodily injuries" and holding claims for consequential injuries within its coverage. By that time, too, the particular rule of the Nelson case had been changed by statute. The parties here, as well as the cases, indulge in rather extensive deductions from slight variations in the language, as with respect to "for" or "on account of," which do not strike us as enlightening, at least for present purposes. The only safe conclusion appears to be that no one single infallible meaning can be ascribed to the term, and that if the cases suggest anything, it is the more natural rule that to determine its content the purpose of the statute must be looked to. As we have just said in Federal Deposit Ins. Corp. v. Tremaine, 2 Cir., 133 F.2d 827, "There is no surer guide in the interpretation of a statute than its purpose when that is sufficiently disclosed; nor any surer mark of oversolicitude for the letter than to wince at carrying out that purpose because the words used do not formally quite match with it." To the same effect is the statement of Holmes, J., while on circuit, Johnson v. United States, 1 Cir., 163 F. 30, 32, 18 L.R.A.,N.S., 1194, so favorite a quotation of the courts. Commissioner of Internal Revenue v. Beck's Estate, 2 Cir., 129 F.2d 243, 245; Commissioner of Internal Revenue v. Ickelheimer, 2 Cir., 132 F.2d 660; Clarke v. Harleysville Mut. Cas. Co., 4 Cir., 123 F.2d 499, 501; United States v. Hutcheson, 312 U.S. 219, 235, 61 S.Ct. 463, 85 L.Ed. 788.

In an interesting discussion of this enduring problem of statutory interpretation, A Short Way with Statutes, 56 Harv.L. Rev. 388, 389, 424, Professor Max Radin urges that judges relieve themselves of the burden "of feigning an inferiority complex that they really do not have" by returning to the maxim of Coke, Heydon's Case, 3 Co. 7a, 7b, Magdalen College Case, 11 Co. 66b, 73b: "The Office of Judges is always to make such Construction as to suppress the Mischief and advance the Remedy; and to suppress subtle Inventions and Evasions for Continuance of the Mischief." He might well have added the balance of the quotation, "and to add force and life to the cure and remedy according to the true intention of the makers of the act pro bono publico." We have no doubt that we suppress an Evasion for the Continuance of the Mischief and add life to the cure

according to the legislators' intent and the public good when we order, as we do, that the judgment below be

Reversed.