## TRENTON BEVERAGE CO. v. BERK-SHIRE, Deputy Com'r of Internal Revenue, et al.

### No. 8826.

Circuit Court of Appeals, Third Circuit.

Argued May 16, 1945.

Reargued Sept. 5, 1945.

Decided Sept. 18, 1945.

MARIS and BIGGS, Circuit Judges, dissenting.

Herbert M. Bingham, of Washington, D. C. (Linton M. Collins and H. Donald Kistler, both of Washington, D. C., and Joseph J. Felcone, of Trenton, N. J., on the brief), for petitioner.

Matthias N. Orfield, Sp. Asst. to Atty. Gen. (Wendell Berge, Asst. Atty. Gen., and Carolyn R. Just, Sp. Atty., of Washington, D. C., on the brief), for respondent.

Before BIGGS, MARIS, DOBIE, GOODRICH, and McLAUGHLIN, Circuit Judges.

DOBIE, Circuit Judge.

This case is before us under the Federal Alcohol Administration Act, 27 U.S.C.A. § 201 et seq. (hereinafter called the Alcohol Act), to review an administrative order of the Alcohol Tax Unit suspending, for a period of thirty days, the Wholesaler's and Importer's Basic Permits of the Trenton Beverage Company, Incorporated (hereinafter called Trenton). The grounds on which the revocation was based were alleged violations by Trenton of the Emergency Price Control Act of 1942, 50 U.S. C.A.Appendix § 901 et seq., hereinafter called the Emergency Act) as amended,

and regulations and orders issued pursuant thereto, in that Trenton sold beer to one Pearl Laschitzki and whiskey to one Renato Canzonese at prices above the maximum price fixed under the Emergency Act.

Authority for the suspension of Trenton's permit is found in section 4(d) of the Alcohol Act, 27 U.S.C.A. § 204(d), which reads:

"*Conditions.* A basic permit shall be conditioned upon compliance with the requirements of section 205 of this title (relating to unfair competition and unlawful practices) and of section 206 of this title (relating to bulk sales and bottling), with the twenty-first amendment and laws relating to the enforcement thereof, and *with all other Federal laws relating to distilled spirits, wine, and malt beverages, including taxes with respect thereto.*" (Italics ours.)

And since there was no violation by Trenton of any of the *conditions expressly set out* in this section, the suspension here is valid if, but only if, Trenton's violation of the Emergency Act comes within the italicized portion of this section. In other words, the suspension is proper only if the Emergency Act falls within the statutory category of "all other Federal laws relating to distilled spirits, wine, and malt beverages, including taxes with respect thereto." We believe that the Emergency Act is quite outside this ambit of the Alcohol Act. Accordingly, the suspension order must be set aside.

■■ It is a matter of common knowledge, certainly it is elementary learning to federal judges, that there is a vast body of federal statutes dealing with "distilled spirits, wine, and malt beverages." All of Title 27 in the United States Code Annotated, occupying a complete volume, is given to Intoxicating Liquors. These statutes are far-reaching, rather complete in themselves, and, what is more important for our problem, *quite distinctive.* We are, therefore, convinced that the phrase "Federal laws relating to distilled spirits, wine, and malt beverages," as used in section 204(d) of Title 27, meant (and meant only) what it seems to say—this distinctive body of statutes dealing with these beverages. It requires a rather vivid imagination to find that Congress, by these words, could have meant to include a future emergency statute, of almost universal scope, passed

in a world war to keep down the prices of commodities of multitudinous classes and characters.

■ This conclusion is strengthened by either an analytical, a historical or a functional approach to the two statutes involved —the Alcohol Act and the Emergency Act. In the report which accompanies H. R. 8870 (that later became the Alcohol Act) is found (House Report 1542, 74th Congress, 1st Session, page 4) this language:

"All provisions relating to open-price competition, including posting of prices and prohibition of guarantees against decline in price and of refunds, rebates, and concessions have been omitted."

And, when the Alcohol Bill was debated before the House of Representatives, Congressman Cullen made the statement (79 Cong.Rec. p. 11714): "Price fixing * * * (is) not contained in this bill." Other utterances of the lawmakers seem to indicate quite clearly that price fixing was in no way contemplated under the Alcohol Act. On the other hand, the Emergency Act, comprehensive and complete in itself, is an emergency measure (as indicated by its title) enacted for the express purpose of stabilizing prices and preventing inflation, as an effective means of aiding the speedy and victorious prosecution of World War II. Hardly could Congress have intended that this great statute was in any sense to be deemed an appendage to the Alcohol Act.

The distinction between the two acts (the Alcohol Act and the Emergency Act) becomes of tremendous practical importance when we consider the question of procedure for the purpose of suspending permits. Each act makes specific provision for such procedure; and the two procedures present wide differences in aspects that must be deemed essential. It is, therefore, a vital matter to an alleged violator (as in the instant case) whether he be proceeded against under the one act or the other.

Under the Alcohol Act, the procedure may be quite summary in character, no warning is necessary to the violator thereof, and the suspension of a permit may be effected (as here) by the administrative agency, acting alone without the sanction of the court. Whereas, under the Emergency Act, as was aptly said by Senator Brown (Senate Report 931, 77th Congress, 2d Session, at page 9):

"Suspension of a license, which is limited to a maximum period of 12 months, may be ordered only by a court. The Administrator has no power to suspend or revoke a license under the committee substitute. Grounds for suspension do not exist until a licensee has first received from the Administrator a warning notice that he has violated a provision of the license or of any regulation, order, price schedule, or requirement which may be applicable to him. If he ignores such a warning notice, and again violates, the Administrator may apply to the local, State, or territorial court for a suspension order or, in certain circumstances, he may apply to the appropriate United States district court. If the court suspends the license, the licensee may appeal and may secure a stay pending the appeal if his case merits it."

And quite germane here are the remarks of Congressman Wolcott on the so-called "kangaroo courts" (90 Congr.Rec. at page 5927).

We, therefore, think that the Alcohol Unit exceeded its authority when, under the Alcohol Act and the procedure thereunder prescribe, it suspended Trenton's Basic Permit issued under that Act, for a violation of Maximum Price Regulation 445 of the Emergency Act. The sanctions of the Emergency Act are entirely adequate for any violations of this measure. We see no practical or legitimate reason for using the Alcohol Act to enforce the Emergency Act—a procedure leading (as in the case before us) to both uncertainty and unfairness.

■ The two statutes, the Alcohol Act and the Emergency Act, are quite separate and distinct, each from the other. Violators of the Emergency Act should be proceeded against under the sanctions and procedure of that Act, whether such violators are dealers in liquor, groceries or other commodities. This course of action is demanded by the orderly administration of justice. The mere fact that Trenton's activities are controlled by two different statutes affords no adequate reason for the application of cross sanctions.

■ Finally, we observe that under the decisions of the Supreme Court, the penalty provisions of the Alcohol Act should be construed rather strictly. See the opinion of Mr. Justice Strong in Tiffany v. National Bank of Missouri, 85 U.S. 409, 410, 18 Wall. 409, 21 L.Ed. 862; and the opinion of Mr. Justice White in Keppel v. Tiffin Savings Bank, 197 U.S. 356, 362, 25 S.Ct. 443, 49 L.Ed. 790.

Our opinion makes it unnecessary for us to consider any further contentions advanced by counsel for Trenton.

The order of the Alcohol Tax Unit suspending Trenton's Basic Permit is set aside.

Order set aside.

MARIS, Circuit Judge (dissenting).

I cannot agree with the conclusion reached by the court that the Secretary of the Treasury acting through the Deputy Commissioner of Internal Revenue in charge of the Alcohol Tax Unit[1] exceeded his authority by ordering the suspension of Trenton's basic permit for a period of thirty days. The Deputy Commissioner purported to act pursuant to that provision of Section 4(d) of the Federal Alcohol Administration Act 27 U.S.C.A. § 204(d) which reads "A basic permit shall be conditioned upon compliance * * * with all other Federal laws relating to distilled spirits, wine, and malt beverages, including taxes with respect thereto." The Deputy Commissioner suspended the basic permit because he found that Trenton had failed to comply with regulations promulgated by the Price Administrator under the Emergency Price Control Act, specifically Maximum Price Regulations 445[2] and Maximum Price Regulation 259.[3]

Maximum Price Regulation 445 establishes maximum prices for distilled spirits and wines and Maximum Price Regulation 259 establishes maximum prices for domestic malt beverages. It is conceded by Trenton that regulations promulgated by the Price Administrator under authority of the Emergency Price Control Act have the force of law. Compare United States v. Grimaud, 1911, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563, and see Yakus v. United States, 1944, 321 U.S. 14, 435, 64 S.Ct. 660 88 L.Ed. 834. It seems to me that more apt language could hardly have been used to describe Maximum Price Regulations 445 and 259 than "Federal laws relating to distilled spirits, wine, and malt beverages."

As I understand it the court's view is that the federal laws thus referred to are

---

[1] See Strauss v. Berkshire, 8 Cir., 1942, 132 F.2d 530, 532.

[2] 8 F.R. 11161.

[3] 7 F.R. 8950.

only those which distinctively deal with these beverages and are included in the United States Code in Title 27—Intoxicating Liquors. So narrow a construction of statutory language needs potent reasons to justify it. What are those reasons?

It is said that the legislative history of the Federal Alcohol Administration Act indicates that it was not intended to apply to price fixing. There is no doubt that the act itself was not intended to and does not regulate or relate to the prices at which alcoholic beverages are to be sold. The fact is, however, that the act was intended to replace the code of fair competition for the industry which had been adopted under the National Industrial Recovery Act, 48 Stat. 195, and which had contained provisions relating to price fixing. The portion of the report of the House Committee upon the bill which the opinion of the court quotes is found under the heading "The Former Code System" and does not appear in the Committee's analysis of the provisions of the bill. More pertinent to my mind is the following statement contained in the House Committee Report:

"The only conditions which attach to a validly issued permit (other than revocation because of nonuse for more than 1 year or termination in the event of transfer) are: (1) Compliance with the provisions of the bill relating to unlawful practices involving interstate or foreign commerce and in some instances involving enforcement of the postal laws, (2) compliance with the twenty-first amendment and laws relating to the enforcement thereof * * * and (3) compliance with all other Federal laws now in force or hereafter enacted relating to distilled spirits, wine and malt beverages, including taxing laws, postal laws, and such interstate commerce laws as the Reed Amendment (sec. 4(d) ). The permittee is thus left free under the bill to conduct his business as he sees fit, *subject only to compliance with Federal laws of unquestionable validity.* * * *" [Emphasis supplied.] (House Report 1542, 74th Cong. 1st Sess. p. 7).

It is deemed of great significance by the court that whereas the procedure for the suspension of a permit which is provided by the Federal Alcohol Administration Act is summary in character, that for the suspension of a license which is provided by the Emergency Price Control Act is by trial in a court of record. Had the Price Administrator sought a suspension of Tren-ton's license Trenton would have been entitled to the same procedural safeguards as are provided for by the Emergency Price Control Act for the seller of any commodity whether it be bread, meat, milk or liquor. The action against Trenton, however, was not brought by the Price Administrator but by the agency to which Congress had entrusted the specific task of supervising and policing the liquor industry insofar as its activities in interstate and foreign commerce bring it within the jurisdiction of the federal government. Since the Federal Alcohol Administration Act provides definite standards to be applied by the administrative agency in the suspension of a permit and also provides for findings after due notice and opportunity for hearing, as well as for judicial review, the act fulfills all constitutional requirements. See Interstate Commerce Comm. v. Louisville & Nash. R. Co., 1913, 227 U.S. 88, 91, 33 S.Ct. 185, 57 L.Ed. 431; National Labor Relations Board v. Jones & Laughlin Steel Corp., 1937, 301 U.S. 1, 47, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352. Consequently the fact that the permit was suspended in a summary proceeding is unobjectionable.

That this procedural point is in reality immaterial appears when we note that subsection (a) of Section 4 of the Federal Alcohol Administration Act, 27 U.S.C.A. § 204(a), also refers to "any Federal law relating to liquor." But the reference here is to one who has been convicted in a court of a misdemeanor under such a law. The subsection provides that such a person shall not be eligible for three years to receive a basic permit. Under the court's decision that the Emergency Price Control Act is not such a law the Deputy Commissioner of the Alcohol Tax Unit might be compelled to issue a basic permit to an individual who had been convicted by a jury of selling liquor above ceiling prices in violation of the Emergency Price Control Act.

The court says that the sanctions of the Emergency Price Control Act are entirely adequate for violations of the character here involved and that there is no practical or legitimate reason for using the procedure of the Federal Alcohol Administration Act to enforce the Emergency Price Control Act. It seems to me that what the Deputy Commissioner is doing is to carry out the mandate of Congress, as expressed in the Federal Alcohol Administration Act, that a permittee who violates a regulation which

Congress has seen fit to impose upon his business shall not be allowed to continue doing that business under the aegis of a Congressionally authorized permit. It is true, of course, that in effect the action taken by the Deputy Commissioner amounts to an enforcement of the Emergency Price Control Act. But surely there is nothing reprehensible in two government agencies cooperating in procuring effective enforcement of an express Congressional objective.

When it passed the Emergency Price Control Act Congress imposed upon the Price Administrator a truly herculean task. He was called upon to take hold of the economy of the whole nation, to fix maximum prices for all commodities, and to see that the maximum prices so fixed were complied with. In view of the immensity of this task and of the necessarily small enforcement staff available to the Price Administrator I cannot think that Congress intended that in performing this vital task he should not have the assistance of all other governmental agencies whose existing jurisdiction and powers were such as to enable them to cooperate. In view of the language of Section 4(d) of the Federal Alcohol Administration Act I think that the Alcohol Tax Unit is in position to cooperate in enforcing price control in the liquor industry, the particular industry for which it is responsible, by appropriate exercise of its power to suspend and revoke the permits of those members of the industry which are found to have violated the Emergency Price Control Act.

Finally, the court says that, under the decisions of the Supreme Court, citing Tiffany v. National Bank of Missouri and Keppel v. Tiffin Savings Bank, the penalty provisions of the Federal Alcohol Administration Act should be construed strictly. In Tiffany v. National Bank of Missouri, 85 U.S. 409, 18 Wall. 409, 21 L.Ed. 862, the statute construed was the National Banking Act, 12 U.S.C.A. § 21 et seq., and in Keppel v. Tiffin Savings Bank, 197 U.S. 356, 25 S.Ct. 443, 49 L.Ed. 790, the statute construed was the Bankruptcy Act, 11 U.S.C.A. § 1 et seq. In neither case does the Supreme Court express its views as to the construction to be given to penalty provisions in liquor control statutes. An eminent authority on statutory construction in discussing general welfare legislation says:

"In the interpretation of statutes carrying criminal penalties, and providing for the forfeiture of property, liquor licenses, and bonds, the cases are in apparent disagreement as to the policy to be followed in their interpretation. It seems, that since the effectiveness of the liquor laws is dependent upon rigid enforcement, they should not be defeated by technicalities in cases which may operate to impose some hardship on the person who has violated their spirit." 3 Sutherland on Statutory Construction, p. 405, § 7203.

This court in Feitler v. United States, 3 Cir., 1929, 34 F.2d 30, affirmed sub nomine Danovitz v. United States, 1930, 281 U.S. 389, 50 S.Ct. 344, 74 L.Ed. 923, placed itself in the ranks of those courts which construe legislation involving intoxicating liquors liberally.

None of the grounds upon which the court bases its conclusion persuades me that the construction which it places upon the phrase "Federal laws relating to distilled spirits, wine, and malt beverages" is either logical or desirable. On the contrary I think that the reference in the statute is to all other federal laws which do in fact regulate or relate to the manufacture or sale of distilled spirits, wine and malt beverages even though, by reason of the generality of their terms, such beverages are not specifically referred to by name or designation.

The business of manufacturing and selling intoxicating liquors has been in this country and elsewhere the subject of special governmental control for a great many years. Because of the inherent possibilities for harm which are involved the business has been strictly regulated and those who engage in it have been sought to be held to high standards of rectitude. The Federal Alcohol Administration Act is an example of this governmental policy. Section 4 which provides for the issuance of permits to importers, distillers, rectifiers, wine producers and wholesalers lays down in subsection (a) specific standards to which applicants must conform. Subsection (d) provides, as we have seen, that a basic permit issued under the act shall be held upon the condition that the permittee complies not only with the requirements of the act itself but also with those of all other federal laws relating to such beverages. The enforcement of the act has been entrusted to the Alcohol Tax Unit of the Bureau of Internal Revenue and its Deputy Commissioner in charge of that unit who suspended the permit here involved.

I think it is wholly in accord with the Congressional scheme of regulation and in the interests of efficient administration that the Alcohol Tax Unit in supervising the liquor industry should take into consideration whether permittees are in fact complying with all the laws which Congress has enacted for the regulation and control of their business. I cannot believe that Congress intended that the agency directly responsible for the issuance and revocation or suspension of permits for the interstate liquor industry should be required to retain in force the federal permit of a permittee which the agency has found to have engaged in a wilful violation of a federal law regulating its business.

The Deputy Comissioner upon evidence which I am satisfied was amply sufficient, found that Trenton violated the Emergency Price Control Act by selling 50 cases of whisky at nearly double the ceiling price and by selling 220 cases of beer at $1.00 per case above the ceiling price. The effect of the court's decision is that the Alcohol Tax Unit must continue the petitioner's basic permit in force in spite of these unlawful black market transactions on its part. For the reasons stated I cannot concur in this decision.

I am authorized to state that Judge BIGGS concurs in this opinion.