**BILLIK et al. v. BERKSHIRE, Deputy Com'r, Bureau of Internal Revenue, Alcohol Tax Unit, et al.**

**No. 112.**

Circuit Court of Appeals, Second Circuit.

March 13, 1946.

Harry G. Herman and Van Buren & Schreiber, all of New York City, for appellants.

Wendell Berge, Asst. Atty. Gen., and Herbert Borkland and Matthias N. Orfield, Sp. Assts. to the Atty. Gen., for appellees.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

This is an original petition to this court under the provisions of the Federal Alcohol Administration Act, 49 Stat. 978, 27 U.S.C.A. § 204(h), which is in effect an appeal from orders of the District Supervisor of the Alcohol Tax Unit and the Deputy Commissioner of Internal Revenue in charge of the Alcohol Tax Unit. The orders suspended for a period of thirty days the wholesalers and importers basic permits of Samuel Billik, Samuel Futterman, Irving Rice, Max Holtz, Joseph Kanengiser, Ruby H. Popper and Morris R. Sprung, co-partners in business under the firm name of Popper Morson Company, who maintain their principal place of business in the City of New York.

The permits were suspended solely on the basis of a finding, after hearings in accordance with 27 U.S.C.A. § 204(e), that the petitioners had violated price regulations effective under the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq., by selling sixteen hundred cases of whiskey in November, 1943, to the Tarrant Wholesale Drug Company of Houston, Tex. at eleven dollars per case in excess of the legal maximum price. The issues are (1) whether the finding is supported by substantial evidence and (2) if so, whether the administrative officers had the power to suspend the permits under 27 U.S.C.A. § 204(d) solely because of the violation of price regulations.

One Baumohl, a buyer for the Tarrant Wholesale Drug Company, testified at the hearing before the Hearing Officer that in November, 1943, he purchased sixteen hundred cases of whiskey from Futterman who represented the petitioners. He also testified that he paid Futterman $17,600 in cash at the time the sale was made as an inducement to sell the whiskey ostensibly at the ceiling price at which it was billed to the Drug Company in Texas which paid the bill. Futterman denied that he had received any cash from Baumohl. The Hearing Officer accepted the evidence of Baumohl and found accordingly. If believed, it is apparent that Baumohl's testimony was substantial evidence to support the facts found. His testimony that he paid Futterman related to a transaction in which he participated and what happened was obviously within his knowledge. The finding that the money had been paid turned upon questions of credibility in the light of all the circumstances including the impression made by the appearance of the witnesses when they testified and we cannot reverse an administrative finding on such an issue of credibility alone. ·

Accepting the finding, the more difficult issue is whether the sale of the whisky above the ceiling price was a legal ground for the suspension of the petitioners' basic permits. Sec. 204(d) of 27 U.S.C.A. provides that: "(d) Conditions. A basic permit shall be conditioned upon compliance with the requirements of section 205 of this title (relating to unfair competition and unlawful practices) and of section 206 of this title (relating to bulk sales and bottling), with the twenty-first amendment and laws relating to the enforcement thereof, and with all other Federal laws relating to distilled spirits, wine, and malt beverages, including taxes with respect thereto."

There being no other basis for the suspension of the basic permits, the precise issue is whether the violation of the price regulations, issued and effective under the provisions of the Emergency Price Control Act, supra, was a failure to comply with a federal law embraced within the meaning of the phrase "and with all other Federal laws relating to distilled spirits, wine, and malt beverages, including taxes with respect thereto" found in § 204(d).

Of course if all that were needed to construe a statute correctly were a starkly literal reading of the language regardless of whether the result so reached was one which could reasonably be thought to have been intended by Congress, one may easily say that the price regulations applicable to the sale of whisky are federal laws relating to distilled spirits. It would follow that the violation of them by the petitioners was a legal ground for the suspension of their basic permits. But statutory construction does not lend itself to so simple a solution and, perhaps unfortunately, the task of judges properly performed is not so easy as it otherwise might be. Attention must always be given to what Congress sought to accomplish by the statute. As we said in Federal Deposit Ins. Corp. v. Tremaine, 2 Cir., 133 F.2d 827, 830, "There is no surer guide in the interpretation of a statute than its purpose when that is sufficiently disclosed; nor any surer mark of oversolicitude for the letter than to wince at carrying out that purpose because the words used do not formally quite match with it." We reiterated that in Burnstein v. United States Lines Co., 2 Cir., 134 F.2d 89, 93. See also, Pembroke Realty & S. Corp. v. Com'r, 2 Cir., 122 F.2d 252, 255; Com'r v. Hopkinson, 2 Cir., 126 F.2d 406, 411; Cabell v. Markham, 2 Cir., 148 F.2d 737, 739, certiorari granted, 325 U.S. 847, 65 S.Ct. 1415.

Had Congress intended, as in effect the respondent now contends, to make compliance with all federal laws which a basic permit holder might violate in conducting his business so licensed a condition upon that permit, it would have been so easy to have said that in so many words that one naturally first looks to the language actually used to see whether some other intent is thereby disclosed. We think it is. There were when the Federal Alcohol

Administration Act was passed, as there are now, numerous federal laws relating to distilled spirits, wine and malt beverages which are in a category of their own. See U.S.C.A. Title 27. In § 204(d) Congress, having first provided that a basic permit should be "conditioned upon compliance with the requirements" of such laws as pertained to unfair competition and unlawful practices, to bulk sales and bottling, with the Twenty-first Amendment and with laws having to do with its enforcement added the phrase "and with all other Federal laws relating to distilled spirits, wine, and malt beverages" to include, we think, all of the other federal laws in the same category which dealt with the regulated liquor traffic in a comparable way by having to do with its control and management as such. This seems to have been made reasonably clear by the addition of the phrase "including taxes with respect thereto" which brought into play certain specific laws in another category since they "relate" to the business of basic permittees in the general way they relate to the business of others in the sense that the federal power to tax is exerted generally on business transactions and their results whether basic permittees or others in business are involved. By mentioning one particular class of laws of general applicability Congress indicated its intention not to have the violation of other laws of similar generality made the basis of suspension or revocation of these permits. It left basic permit holders like those in other kinds of business subject to the same sanctions in respect to the violation of such laws as it left the others.

The price regulations here violated are in the same category of general applicability as are the tax laws. There is a special procedure which must be followed in their enforcement and violations when established bring about certain consequences which the Emergency Act itself provides. Without a clear mandate from Congress it stretches the language of § 204(d) (e) of the Alcohol Act beyond reasonable bounds to allow it to become the basis for using the drastic summary procedure there provided as a weapon added to the provisions of the Emergency Act for the enforcement of price regulations in respect to the holders of basic permits. Trenton Beverage Co. v. Berkshire, 3 Cir., 151 F.2d 227.

Orders set aside.

CLARK, Circuit Judge (dissenting).

I agree with the persuasive dissent of Judge Maris, concurred in by Judge Biggs, Trenton Beverage Co. v. Berkshire, 3 Cir., 151 F.2d 227, 229-232, that what is here termed "a starkly literal reading" of the statutory language is the natural and reasonable one indicated by both the words used and the underlying legislative policy. It would seem not strange that Congress should wish liquor permits issued only to those who observed the law; and the Emergency Price Control Act is now law. Further, it is law too vitally important to the national welfare to be excepted from such a reasonable requirement or left so that its violation must be held a matter of no concern by the Alcohol Tax Unit in issuing basic permits to wholesalers and importers. The suggestion that Congress could easily have found more specific language to show its intent to include this later enacted statute within its scheme of liquor control seems to me unpersuasive. For what language better adapted to do that very thing (short of a separate listing of a good share of the United States Code) can be thought of than compliance "with all other Federal laws relating to distilled spirits, wine, and malt beverages"? And Congress did make a natural addition to this phrase, which points directly to its intent to make the statute generally inclusive, viz. the words "including taxes with respect thereto." It could hardly be expected then to have added: "and also laws against inflation of prices when later enacted."

As to the "summary procedure" of the Price Control Act, Judge Maris well points out that a remedy directed towards one problem and administered under conditions pertinent to that problem does not preclude a different remedy, differently administered and for different ends. The procedure with which we are dealing here is certainly not oversummary. The violation occurred in November, 1943; and the final administrative order, after various rehearings and appeals, was not entered until March 29, 1945, and has now been suspended, pursuant to its terms, by this petition for review. If there be criticism of the procedure under the other Act, I fail to see its pertinency to the interpretation of this quite different statute.