**FERGUSON, Plaintiff-Appellee, v. MORTER, Defendant-Appellant.**

Ohio Appeals, Second District, Montgomery County.

No. 2221. Decided April 16, 1953.

Beigel & Mahrt, Louis R. Mahrt, of Counsel, Dayton, for plaintiff-appellee.

Curtner, Brenton & O'Hara, Dayton, for defendant-appellant.

## OPINION

By MILLER, J.:

This is a law appeal from the judgment of the Municipal Court, Dayton, Ohio. The action was one for damages to the plaintiff's automobile resulting from a collision with another car. The only question presented is whether the value of the car before the accident is limited to the selling price fixed by the Office of Price Administration under authority of the Emergency Price Control Act, or was the reasonable market value. The Court received evidence which reflected that the maximum selling price of the plaintiff's 1937 Plymouth, four-door sedan was $190.00, but several witnesses testified that its reasonable market value was $300.00. There seems to be no conflict in the testimony as to the value immediately after the accident, the same being fixed at $25.00.

The court found in a separate finding of facts that the reasonable value of the repairs was $276.40; that the reasonable market value of the automobile immediately prior to the collision was $255.00; that after making several other allowances and deducting the $25.00 valuation after the accident, the plaintiff had been damaged in the sum of $258.00, for which judgment was rendered. The appellant contends that under the facts presented the judgment should have been limited to the O. P. A. selling price, less the $25.00 value after the accident, or $165.00 plus $4.50 towing charge.

This case seems to be one of first impression in this state, although the question has been passed upon in other jurisdictions. In considering the question presented it becomes necessary first to look into the purpose that Congress had in mind in adopting the Emergency Price Control Act, 50 U. S. C. Appendix 901. Paragraph A of this section declares its purpose: "To stabilize prices and to prevent speculative, unwarranted and abnormal increases in prices; * * * to assure that defense appropriations are not dissipated by excessive prices; * * * to prevent hardships * * * to federal, state and local governments which would result from abnormal increases in prices * * *."

In Trenton Beverage Co. v. Berkshire, C. C. A. 3, 1945, 151 F. 2d 227, the court held at Section 901, et seq.,

"It is complete in itself, and is an emergency measure enacted for the express purpose of stabilizing prices and preventing inflation as an effective means of aiding the speedy and victorious prosecution of war."

In Barnett v. Bowles, 151 F. 2d 77, the court held that the object of the Act is to achieve a comprehensive regulation of the price of commodities in order to assure, in a national

emergency, an adequate supply of goods for the public at fair prices.

From these authorities, and many others we have examined, it appears that the object of the Act is to combat the inflationary effects of increasing prices. It is our conclusion that the purpose of the Act would not be served by limiting the amount of damages that may be awarded in a tort action. This is not a sale, and the Act provides that it shall not be construed as requiring a person to sell. The owner of an automobile who has paid for the same and does not see fit to "sell" or "deal" in it ought not to be classified as a dealer or seller when he seeks to recover damages from a wrongdoer. We find the same question arose in the case of Ross Produce Co. v. Thompson, 20 N. W. 2d 57. At page 61 the court, quoting from Tierney v. General Exchange Insurance Corporation, 60 F. Supp. 331, 332, says:

"The interesting question, therefore, is, Did the fixing of the ceiling price by the Administrator for one who deals in, or sells used automobiles, fix the value of the car?

"We must bear in mind that the (Second) War Powers Act, 50 U. S. C. A. Appendix, Section 631, et seq., was for the purpose of curbing, lessening and preventing inflation, so far as legislation could or can accomplish that end. In order to make regulations under it legally effective, it was necessary that they should be sufficiently specific to cover the transactions at which they were aimed. The particular schedules pertinent to this study concern the 'sale, or, delivery' of used cars. There is no apparent reasonable stretch of the regulations which would cover an 'adjustment for insurance' losses. In truth, there is a phrase in the regulations which excepts such efforts from the regulation. Nor is there anything in the Act or regulations which compels the owner of property to dispose of it. The owner who has paid for an automobile and who does not see fit to 'sell' that automobile, or to 'deal' in it, ought not to be classified as a 'seller' or a 'dealer' if and when he seeks pay from an insurance company which has collected a premium from him and agreed to pay him for the fire loss of his property. Such an event does not classify him as either a 'seller' or a 'dealer.' He has not been identified in any of the regulations under the Act, and seems to have been accepted (excepted) from their operations."

The Supreme Court of Minnesota has followed the above cited case in Mattfeld v. Nester, 226 Minn. 106, 32 N. W. 2d 291.

It is, therefore, our conclusion that the Court did not err in arriving at the amount of damages the plaintiff had

suffered, the same not being in excess of the reasonable market value of the automobile. The judgment will be affirmed.

WISEMAN, PJ, HORNBECK, J, concur.