J. J. Roushar, Administrator of the Estate of Robert B. Rubart, Appellee, v. George Dixon, Appellant.

No. 45910.

March 10, 1942.

Hallagan, Fountain, Steward & Cless and McFarlin & McFarlin, for appellant.

Talbott & Talbott and E. P. Cronin, for appellee.

STIGER, J.—The accident happened on a dirt road, near the crest of two steep hills, a short time before noon on July 23, 1940. Plaintiff's intestate, Reverend Robert Rubart, was taking some children to their homes in his automobile after attending a Bible class. In the front seat with Mr. Rubart were three children, ages 7, 5, and 4, and Margie Lyman, 14 years old, a witness for plaintiff, was in the back seat.

Walter Kahler, driver of defendant's truck, was approaching the crest from the south and Mr. Rubart was approaching from the north. The collision occurred about 25 feet north of the crest.

Section 5031.03, 1939 Code, reads in part as follows:

"5031.03 Control of vehicle—signals. The driver of a motor vehicle traveling through defiles or on approaching the crest of a hill or grade shall have such motor vehicle under control and on the right-hand side of the roadway" etc.

Section 5000.01, subsection 47, 1939 Code reads:

"47. 'Roadway' means that portion of a highway improved, designed, or ordinarily used for vehicular travel."

Each party claims the other violated section 5031.03.

I. Defendant's first assignment of error is that the court erred in overruling ground 1 of his motion for a directed verdict which alleged decedent was contributorily negligent as a matter of law.

Margie Lyman testified that as Mr. Rubart drove south up the hill his car was on the west side of the road and continued up the hill 3 or 4 feet from the west shoulder of the grade, and that she saw the truck coming over the top of the hill and at the time of the collision it was a little to the left of the center of the automobile.

Defendant claims this testimony is without probative value in view of the statements of the witness on cross-examination. We will refer to the cross-examination:

"Q. As you proceeded up that hill, what was the first thing you noticed before this accident occurred? A. I had

been looking across the road into the field, but after I looked around the first thing I noticed was the truck.

"Q. Which field had you been looking into? A. The west field."

The witness then testified in substance that she had been gazing in that direction (toward the west field) since the car began its ascent of the hill; that she looked back when Mr. Rubart said "Uh Oh!" and she then saw the truck. The witness further testified:

"As we crossed the bridge down at the foot of the hill we were pretty close to the west edge of the bridge and I was looking out in the field. The road we were traveling over was a dirt road and dry. We folks started out from a stop down there at the Yount residence [located just north of the bridge at foot of hill] and picked up speed from there. That speed was very gradually increased as we proceeded on up the hill. I was seated in the back seat of the car and from the time we left the Yount residence until I heard Reverend Rubart say 'Uh Oh!' I was looking out into this field. During that time I never looked ahead down the highway at all."

It is quite obvious the witness was not looking straight west into the field during the journey from the Yount residence up the hill. Although she did not look straight ahead down the roadway until she heard Mr. Rubart's exclamation, it is apparent that during the ascent her vision included at least the west one half of the road as she looked in the direction of the west field. During the time she states she was looking across the road into the field she observed the automobile was close to the west side of the bridge, that it continued up the hill on the west side of the road, and she realized the speed was gradually increased as the car proceeded up the hill. At the time of the collision decedent was driving about 20 miles per hour. We cannot agree with the defendant's proposition that the testimony of this witness is without probative value. The fact that after the collision the Rubart car was near the west edge of the roadway and all the wreckage of this car was between it and the center of the road—that is, west of center—tends to support the testimony of this witness.

Defendant further claims the undisputed evidence is that the tracks and skid marks made by the left tires of decedent's automobile just prior to and at the time of the collision were east of the center of the road, and that the tracks made by the truck were all east of the center of the road. The evidence in regard to the tracks and skid marks is unsatisfactory, contradictory, and inconclusive. The physical facts relied on by defendant fall far short of refuting and overcoming the testimony of the witness Margie Lyman. There was a substantial conflict in the evidence on the question of contributory negligence. We find no error in this assignment.

II. The defendant's contention that there was not sufficient evidence of negligence on the part of the defendant to submit this issue to the jury cannot be sustained. The only specification of negligence of defendant submitted to the jury was that he violated section 5031.03. There was ample evidence in the record to justify the submission of this issue to the jury.

III. The defendant claims the court erred in admitting in evidence statements made by the driver of the truck, Frederick Kahler, as res gestae.

A witness for plaintiff testified that he arrived at the place of the accident about 10 minutes after it occurred, at which time only the decedent and Kahler were present. Mr. Rubart was lying in the ditch and Kahler was supporting his head. The witness testified that Kahler asked him to hold the head of decedent and said he wanted to get out of there and wanted to know if the witness thought "they would hang him" or would "send him to the penitentiary" and stated "he wished a doctor would come." The witness stated Kahler was nervous, worried, and "terribly upset."

Dr. Clark testified that when they moved decedent from the ditch Kahler was greatly perturbed and excited and said, "Doctor, do you think they will put me in jail?" In Stukas v. Warfield-Pratt-Howell Co., 188 Iowa 878, 888, 175 N. W. 81, 84, the opinion states:

"We have repeatedly said that the proper test of admissibility of such statements 'is whether they relate to the principal transaction and are explanatory of it, and are made under

such circumstances of excitement, still continuing, as to show that they are spontaneous, and not the result of deliberation or design. * * * Within this general rule, the admissibility of the declarations under the circumstances of the particular case is largely within the discretion of the trial judge. The facts and circumstances of no two cases can be precisely alike, and the exact length of time is not mathematically controlling.' See Christopherson case, supra; and this idea is, in substance, restated in the Westcott case, supra, which is relied upon by the appellant. * * *

"In Insurance Company v. Mosley, 8 Wall. 397, the Supreme Court of the United States says, of the res gestae rule, that:

" 'The tendency of recent adjudications is to extend, rather than to narrow, the scope of the doctrine. Rightly guarded in its practical application, there is no principle in the law of evidence more safe in its results. There is none which rests on a more solid basis of reason and authority.'

"It seems to be well settled in this state, as well as in many others, that there is no hard and fast rule, fixing with certainty the length of time beyond which the court may say, as a matter of law, that a statement made or act done is not a part of the res gestae."

The court is of the opinion that the statements were prompted by the effect of the collision on the mind of the witness and were uttered under the mental stress occasioned by the unfortunate accident. The conclusion of the trial court that the declarations were spontaneous, not the result of deliberation or design, was well within its legal discretion, and the objection to the testimony as not being res gestae was properly overruled.

IV. Another proposition presented by defendant is that the court erred in overruling his objection to testimony of plaintiff's witnesses as to the speed Kahler was driving the truck at some distance from the place of the collision. Kahler drove onto the north-and-south road at an intersection three quarters of a mile south of the place of the collision and was proceeding to his home for dinner. There were several hills between the intersection and the place of the accident. From points one-half mile and one-quarter mile south of the point

of collision witnesses estimated the speed of the truck at from 25 to 40 miles per hour—Kahler driving at a higher speed down the hills. Kahler estimated his speed at the crest of the hill and at the point of the collision at 30 miles per hour. Kahler was driving at about the same rate of speed up the last hill and toward the crest as, according to plaintiff's witnesses, he had ascended the other hills. Whether evidence of the rate of speed at a time other than at the instant of or immediately prior to the accident should be admitted rests largely in the discretion of the trial court. Thomas v. Charter, 224 Iowa 1278, 278 N. W. 920. We find no abuse of this discretion. Furthermore, in view of Kahler's testimony, no prejudice resulted to the defendant in admitting this testimony. Plaintiff's specification of negligence that Kahler operated the truck at a high and dangerous rate of speed was not submitted to the jury.

V. A deputy sheriff, witness for defendant, testified to the condition of the roadway, its width, and described the tire and skid marks near and at the place of the collision.

This witness made a plat showing the tire and skid marks, and distances, in explanation of his testimony. The witness clearly and definitely located the skid marks and tracks and an illustrative plat was of doubtful necessity or aid to the jury. The court refused to admit this plat, Exhibit 1, in evidence. We find no error in the ruling because several of the legends and marks on the plat were not made from the personal knowledge of the witness. The witness testified:

"I made this plat today. I copied some other plat. This mark that extended east and west across the highway was eight to ten inches wide. I don't know how that mark was made and I don't know what made that mark extending north and south in the highway either. I don't know myself of my own knowledge."

The witness further stated, "I am testifying from my own recollections, not from some plat that has been shown to me."

No other witness for defendant stated that the said marks and legends made on the plat by the witness were correct.

It may be stated that the testimony of this witness as to

the location of the tire tracks and skid marks was in conflict with the testimony of the driver and owner of the truck.

■ VI. Instruction No. 10 advised the jury of the standard of care provided by section 5031.03 and then stated:

"This provision of the law applies to both plaintiff's decedent and to the driver of the defendant's truck."

Instruction No. 12 refers to the sole specification of negligence submitted to the jury which was the alleged violation of section 5031.03. The last paragraph of the instruction reads:

"If you find it established by a preponderance of the evidence that Frederick Kahler violated this provision of the law, and you further find that he failed to turn to the right and yield to plaintiff's decedent one-half of said roadway, then he would be guilty of negligence. And if you further find that such negligence on the part of said driver, if any, was the proximate cause of the injury to plaintiff's decedent, and you further find that plaintiff's decedent on his part was free from any negligence which in any manner or in any degree directly contributed to his injury and damage, if any, then your verdict should be for the plaintiff in some amount. If you do not so find then your verdict should be for the defendant."

Defendant states that instruction No. 12 specifically instructed the jury upon defendant's duty under the statute, and that the court erred in refusing his requested instruction No. 6 which contained a similar special statement of the duty of the decedent under this statute.

Instruction No. 2 told the jury that plaintiff could not recover if decedent was guilty of contributory negligence.

Instruction No. 5 defined contributory negligence.

Instruction No. 10 stated the provisions of section 5031.03 applied to both plaintiff's decedent and to the driver of the defendant's truck.

Instruction No. 12 stated that a violation of the section is negligence, and plaintiff, to recover, must be free from contributory negligence.

Instruction No. 23 stated that the court had not attempted to embody all of the law applicable to the case in any one instruction, and that the jury should, in considering any one instruction,

consider it and construe it in the light of and in harmony with all other instructions given and apply them as a whole to the evidence in the case.

We are of the opinion that the jury must have understood from the instructions that plaintiff could not recover if decedent violated the statute and such violation contributed to his injuries. We have considered defendant's criticism of instruction No. 12 and find no error therein.—Affirmed.

Bliss, C. J., and Garfield, Oliver, Wennerstrum, Mitchell, Hale, and Miller, JJ., concur.