HARTFORD FIRE INSURANCE COMPANY, a corporation, cross-appel-
lee, v. STURGISE LEFLER et al., appellants.

No. 51683.

(Reported in 135 N.W.2d 88)

798.

MAY 4, 1965.

Stephens, Thornell & Millhone, of Clarinda, and Nichols & Thornell, of Sidney, for defendants-appellants.

Ross, Johnson, Stuart, Tinley & Peters, of Council Bluffs, and Eaton & Eaton, of Sidney, for plaintiff, cross-appellee.

LARSON, J.—This action for damages brought by Hartford Fire Insurance Company, hereinafter called Hartford, as sub-

rogee and assignee of Ira Bennett, to recover for the damage to Mr. Bennett's farmhouse and contents caused when the house was struck by a farm tractor owned and operated by Sturgise Lefler, while in the employ of Joe Hill, resulted in a jury verdict for defendants.

Thereafter, Hartford filed its motion for judgment notwithstanding the verdict and, in the alternative, for a new trial. The trial court denied the former and sustained the motion for a new trial on the ground that it erred in submitting the issue of sudden emergency to the jury. Both parties appeal.

From the record we learn that Mr. Lefler, employed by Mr. Hill, was operating his own farm tractor pulling an empty wagon up the north slope of a hill on highway 59 about six miles south of Shenandoah, Iowa, toward the farm buildings of Mr. Bennett located on the east side near the crest of the hill, in the afternoon of October 19, 1961, when Mr. James Hagey, driving a 1958 Ford automobile, came up behind him. Highway 59 at this point is a north-south two-lane paved highway with a seven- or eight-foot shoulder on the sides. The weather was clear and the highway was dry. There was a yellow no-passing line on the southbound side as you approach the hillcrest. At this time and place Mr. Lefler was seated on the tractor and was driving about 15 or 20 miles per hour in fifth gear. Mr. Hagey had come up behind Lefler near the bottom of the second hill north of the Bennett house, and had shifted his car to second gear and followed at a distance of some 75 to 100 feet for a little less than a quarter of a mile, when Mr. Lefler looked around, saw him, stood up on the tractor, and then motioned to Mr. Hagey. At the same time Mrs. F. W. Bredensteiner, driving her car, approached the hillcrest from the south. When she was about 300 feet from the spot in front of the Bennett house she saw Mr. Lefler standing on his tractor making some motion with his hand, saw the Hagey car pull out as though to pass and then pull back in his own lane. She saw the tractor pull to the right, make a half circle across the road into Bennett's garden, and then smash into his house. She had pulled over on her shoulder and stopped at least 200 feet away.

Mr. Hagey somehow safely passed by the Lefler tractor, but

Mr. Lefler fell off sometime during this maneuver and the tractor was then unmanned. There is little or no evidentiary conflict up to the time Mr. Lefler stood up on his tractor. Thereafter there is considerable. Mrs. Bredensteiner saw Lefler wave his arm but did not know whether it was to go around or stay back. She saw the tractor pull over to the right and said Lefler fell off "as it went across the highway * * * just about at the east edge" of the pavement. She saw Hagey pull to his left but did not know whether he crossed the yellow line before he pulled back. She did not think he passed the tractor before it turned across the pavement. She pulled onto the shoulder and stopped "to avoid a wreck."

Mr. Hagey testified he followed Lefler for some distance "maybe 75 to 100 feet behind him." He said he "knew we couldn't pass right then" so he "followed him [Lefler] at a safe distance." He said he did not attempt to pass until Lefler stood up, looked over the hill, and "motioned me to go around him." Then Hagey started to pass, still in second gear, and when he discovered Mrs. Bredensteiner's car he stepped on the gas and went on around, clearing her by some 200 feet. He did not see what happened to Lefler in the meantime.

On the other hand, Mr. Lefler denied he signaled Mr. Hagey to go around, but said after he saw the northbound car he motioned Hagey to stay back. He said he saw the Hagey car behind him "quite a little ways" while he was going up the "long slope." After he reached the yellow line near the crest he stood up, saw a car coming, gave a "slow down" signal to the man behind him, pulled off the pavement, hit a bump and fell off. He does not know how he got across the pavement. He recalls before he fell he had the center front wheels and the right rear wheel of his vehicle on the right shoulder. On cross-examination he said he might "have pulled it back to the left" when he hit the bump and fell off. He said the tractor had power steering and turned fast, and that while standing up he could not apply the brakes.

The court submitted the issues of failure to control and driving a tractor at an unreasonable speed under the circumstances, overruled plaintiff's motion for directed verdict as to liability, overruled objections to instructions relating to sudden emer-

gency and as to contributory negligence, overruled plaintiff's objection to the submission of the issue of sudden emergency and as to contributory negligence, and overruled plaintiff's objection to the submission of the issue of sudden emergency. In overruling plaintiff's motion for judgment notwithstanding the verdict and granting a new trial, the court found that the verdict does not effectuate justice, that when the testimony was properly considered it showed no emergency existed, but if one did occur it was contributed to by Lefler himself, and that the submission of that issue to the jury was error.

The first problem presented, then, is whether it fairly appears the trial court's finding that the verdict did not effectuate justice was justified, and whether under the circumstances the court abused its discretion in setting aside the verdict and in ordering a new trial.

I. Whenever it appears that the jury has, from any cause, failed to respond truly to the real merits of a controversy, it has failed to do its duty, and when the superior and more comprehensive judgment of the trial court dictates the jury verdict failed to administer substantial justice to the parties in the case, a new trial should be granted. So we said in Dewey v. Chicago & N.W. R. Co., 31 Iowa 373, 378, and have not since said otherwise; In re Estate of Hollis, 235 Iowa 753, 760, 761, 16 N.W.2d 599, 602, 603; Torrence v. Sharp, 246 Iowa 460, 464, 68 N.W.2d 85, 88; Hall v. West Des Moines, 245 Iowa 458, 470, 62 N.W.2d 734, 740. In Elings v. Ted McGrevey, Inc., 243 Iowa 815, 822, 53 N.W.2d 882, 886, in passing on the court's power to grant a new trial, we said, "when it is convinced that a verdict does not effect justice or that a jury has not done its duty" the trial court may independently exercise the power to grant a new trial.

We have also said when the trial court apparently exercises that power for those reasons, although it may involve conflicting testimony, "appellate tribunals should be slow to interfere." The Woodbury Company v. Dougherty & Bryant Co., 161 Iowa 571, 573, 143 N.W. 416, 417. In Maynard v. Des Moines, 159 Iowa 126, 128, 140 N.W. 208, we said: "But a trial judge has a distinct function to perform, with respect to such matters [granting new trials in the interest of justice], which we feel is

not exercised as freely and as often as it should be. Such court is something more than a mere moderator presiding over a contest in which it has no concern. On the contrary, it has a distinct function to perform, and, whenever it is convinced that justice has not been done under the law and the facts, it is its duty to set aside the verdict and grant a new trial. As an appellate court we have a somewhat different function to perform, * * * and we should not interfere with the final order of the trial judge, except in cases where it appears that such judge has abused his discretion and acted in such an arbitrary and capricious manner that, instead of effectuating justice, he has in fact thwarted it."

Many other cases holding to a like effect may be cited, including the recent cases of Larew v. Iowa State Highway Comm., 254 Iowa 1089, 1094, 120 N.W.2d 462, 464; Coleman v. Brower Construction Co., 254 Iowa 724, 730, 119 N.W.2d 256, 260; Comer v. Burns, 255 Iowa 251, 259, 122 N.W.2d 305, 310, and citations in them.

▪▪▪ Under these pronouncements it is our plain duty to uphold the trial court's action in setting aside a verdict on the ground that it does not effectuate justice unless it is made to appear its action under the circumstances is an abuse of its discretion or will not aid justice, but tends to thwart it. Apparently the trial court here was of the opinion that plaintiff would not have been denied some recovery if the jury had been properly instructed and therefore had not truly responded to the real merits of the controversy under the facts and the applicable law. It found unequivocally "that the verdict in this case does not effectuate justice" and predicated its decision on the inappropriate instruction relating to sudden emergency, which it said was prejudicial error. Other grounds of the motion were overruled, but insofar as they tend to support the grant of a new trial, we may consider them. McMaster v. Hutchins, 255 Iowa 39, 48, 120 N.W.2d 509, 514, and citations; Stake v. Cole, 257 Iowa 594, 133 N.W.2d 714, and citations. Of course, to justify the granting of a new trial upon a proper motion, the trial court's error need not amount to reversible error. If such were the rule, the trial court's power to correct a failure of justice would be meaningless. Coulthard v. Keenan, 256 Iowa 890, 898,

129 N.W.2d 597, 602, and citations; Hall v. West Des Moines, supra; Nicholson v. City of Des Moines, 246 Iowa 318, 330, 67 N.W.2d 533, 540. See Erickson v. Thompson, 257 Iowa 781, 135 N.W.2d 107.

■ II. Proper objections were interposed to the giving of instructions No. 1 and No. 15 relating to legal excuse and sudden emergency. Instruction No. 1 simply told the jury of Lefler's claim that he was confronted with a "sudden emergency not brought about by his own fault." Instruction No. 15, the only other instruction relating to sudden emergency, told the jury, "You are instructed that when one is confronted with a sudden emergency, and because thereof is required to act upon the impulse of the moment without sufficient time to determine with certainty the best course to pursue, he is not held to the same accuracy of judgment as would be required of him if he had time for deliberation. Under such circumstances he is required to act only as an ordinarily careful and prudent person would act when suddenly placed in a similar position, and if he so acts he is not liable for injury or damage resulting from his conduct. When the sudden emergency is brought about by the fault of the defendant, he is not entitled to the benefit of this doctrine and no consideration should be given to this instruction."

Considered abstractly, this instruction is correct. However, under the circumstances here, these instructions are incomplete and thus might be confusing. No instruction was given in regard to what would constitute an emergency, nor were any references made to acts which could be determined as creating the emergency.

■■ It is the court's duty to see that the jury has an intelligent understanding of what it is to decide, and failure to instruct with reasonable fullness, even in the absence of request, is error. Sanford v. Nesbit, 234 Iowa 14, 18, 11 N.W.2d 695. The instructions afford the only guide the jury has for the correct application of the law to the facts. Gardner v. Johnson, 231 Iowa 1233, 1236, 3 N.W.2d 606, 608, and citations.

Here on the issue as to whether there was an emergency such as to furnish a legal excuse for the alleged negligent acts of Mr. Lefler, the court itself seemed confused.

 In the instruction given it seems to assume there was an emergency, and without placing the burden of proof upon the defendants to sustain that contention, simply told the jury they were not entitled to the benefit of that doctrine when the emergency was brought about by their fault. In its ruling on the motion to grant a new trial the court takes the position there was no emergency shown by defendants, but said if there was, as a matter of law defendants were at fault. In view of the evidence, neither position is entirely correct. True, there would have been no emergency if all parties present had stayed in their proper lanes of travel and had obeyed the law, but they did not. Defendant Lefler's evidence was to the effect that he saw Hagey approach from his rear and believed he was going to pass. He saw the car approaching from the south, and both he and Mrs. Bredensteiner said, in effect, they thought there was an emergency and took to the shoulders. If the jury found this was an emergency, other questions appear. The jury may have believed it was created by Hagey as he pulled out to pass. On the other hand, it may have found there was an emergency created by Lefler when he motioned Hagey to pass. If any of these views is adopted, the factual issues should have been submitted to the jury under reasonably full instructions. Sanford v. Nesbit, supra; Kisling v. Thierman, 214 Iowa 911, 243 N.W. 552; Rich v. Herny, 222 Iowa 465, 474, 269 N.W. 489; Gardner v. Johnson, supra, 231 Iowa 1233, 1236, 3 N.W.2d 606, 608, and citations.

As in the Sanford v. Nesbit case, here it appears the instructions given on the issue of sudden emergency were merely form instructions without any particular applicability to this rather simple issue. Since plaintiff had objected to these instructions, it became the court's duty to instruct clearly as to what conduct of the parties would establish an emergency and fix responsibility therefor, not merely state the doctrine generally and allow the jury to speculate on its creation and fault. At least it must be said, as to the vital question of sudden emergency and legal excuse, the instructions given were inadequate and this could raise reasonable doubts that the jury fully under-

stood the issue, and at least justify the exercise of the court's discretion to grant a new trial in the interest of justice.

 In ruling on plaintiff's motion for a new trial, the court stated: "The testimony of plaintiff's witnesses, Mrs. Bredensteiner and Mr. Hagey, showed either that no emergency existed for defendant Sturgise Lefler, or that Mr. Lefler contributed to the emergency by signalling Mr. Hagey to pass * * *. The testimony of Mr. Lefler did not show any emergency, in that his sudden turning of the tractor to the right came when neither the Hagey car nor the Bredensteiner car was traveling in other than its proper lane of travel at a proper speed." Whether these conclusions were justified is not our problem here, but we note the evidence both as to whether the signal given was to pass and the speed of the Hagey car is somewhat in dispute. We simply conclude that under proper instructions, which were not given, this issue might well have been submitted to the jury. Mass v. Mesic, 256 Iowa 252, 254, 127 N.W.2d 99, 101, and citations. As pointed out in Mass v. Mesic, it is not the province of the court to pass upon the weight or credibility of the testimony, and where there is a substantial dispute in the testimony or where from the testimony, although undisputed, reasonable minds might differ, the question is for the jury under proper instructions.

 There are many cases of this court to the effect that the nature and effect of an emergency is generally a fact question. Luppes v. Harrison, 239 Iowa 880, 32 N.W.2d 809; Paulsen v. Mitchell, 252 Iowa 65, 105 N.W.2d 603; Harris v. Clark, 251 Iowa 807, 103 N.W.2d 215; Katcher v. Heidenwirth, 254 Iowa 454, 468, 118 N.W.2d 52. Various definitions of "emergency" by this court were examined by us in Harris v. Clark, supra, and the general rule as stated in 65 C. J. S., Negligence, section 252, page 1134, was approved. It states: "The question whether one was without fault in bringing about an emergency generally is for the jury." This simply means that a person is not entitled to the benefit of the emergency rule if it clearly appears he either had actual knowledge of a dangerous situation or in the exercise of reasonable care could have such knowledge in time to act in relation thereto. Harris v. Clark, supra. The

rule is intended to benefit only those whose conduct did not cause or contribute to the creation of the emergency. Dwyer v. Christensen, 76 S. D. 201, 210, 75 N.W.2d 650, 655, 56 A. L. R.2d 734.

III. Appellee further contends the court erred as a matter of law in refusing to instruct the jury that plaintiff's subrogor, Ira Bennett, and thus the plaintiff, were not guilty of contributory negligence as a matter of law. In instruction No. 4 the court told the jury that it was plaintiff's burden to establish it was not guilty of negligence contributing to the damages suffered by it. In instruction No. 9 the standard or stock instruction ·as to the meaning of the term "contributory negligence" appears. Although not prejudicial error, it is conceivable the giving of these instructions unexplained, may have been misunderstood by the jury. While plaintiff pleaded freedom from contributory negligence and defendants denied the allegation, there was no evidence from which it could reasonably be concluded that plaintiff was negligent in anyway. Surely Mr. Bennett could not be negligent in failing to move his house from the path of this tractor or to build a retaining wall around it sufficient to restrain runaway vehicles. The court might well have told the jury under the facts there was no issue presented on that question, or should have told the jury as a matter of law plaintiff was not guilty of contributory negligence, but we cannot say it was prejudicial error to have given these instructions. However, having failed to fully advise the jury of the status of this issue, considered in the light of the evidence, it could be that the jury gave some consideration thereto, and that it affected the decision. At least, the trial court might reasonably conclude this circumstance an additional basis for setting aside the verdict and granting a new trial.

We considered a like proposition in Low v. Ford Hopkins Co., 231 Iowa 251, 254, 1 N.W.2d 95, 97, where we said: "Even though * * * there was no obtainable direct evidence of Mrs. Low's conduct, we would hesitate to reverse because of Instruction 7 [on contributory negligence dealing with the no eyewitness rule]. While it is doubtless true, as a general proposition, that nondisputed fact questions should not be submitted to the jury, it is not always reversible error to do so. Glass v.

Hutchinson Ice Cream Co., 214 Iowa 825, 833, 243 N.W. 352; International Stock Food Co. v. Beshey, 200 Iowa 165, 204 N.W. 265."

IV. Appellee's contention that the trial court erred in submitting this cause to the jury when it appeared defendants did not make a proper and timely demand for jury trial has no merit. Appellee contends the trial court had no discretion to grant defendants a jury trial because they made no proper or timely motion for it and did not show good cause, citing rule 177(a), (b) and (d), Rules of Civil Procedure. · In other words, it is claimed under the facts revealed herein that the trial court abused its discretion in granting a jury trial, and that error would be a sufficient ground to sustain the court's order granting a new trial, citing McMaster v. Hutchins, supra, 255 Iowa 39, 120 N.W.2d 509; Hot Spot Detector, Inc. v. Rolfes Electronics Corp., 251 Iowa 647, 102 N.W.2d 354, and others.

The record discloses that defendants were late in making their demand for jury trial, said demand being attached to an amendment to their answer. However, on November 1, 1963, they filed an application for a hearing on the late request which was set for and heard on November 8, 1963, a month before the actual trial commenced. The court then ruled orally that the cause would be submitted to a jury, and followed that with a formal order filed on December 6, 1963, which was three days before trial commenced.

Rule 177(d), R. C. P., provides: "Notwithstanding the failure of a party to demand a jury in an action in which such demand might have been made of right, the court, in its discretion on motion and for good cause shown, but not ex parte, and upon such terms as the court prescribes, may order a trial by jury of any or all issues." We fully considered this rule in Katcher v. Heidenwirth, supra, 254 Iowa 454, 462, 118 N.W.2d 52, 56, and in Russell v. Chicago, R. I. & P. R. Co., 251 Iowa 839, 843, 102 N.W.2d 881, 884, 885, and shall not repeat those discussions here. Suffice it to say, we have held the term "for good cause shown" as used in this rule is flexible, and that each application or motion for trial by jury filed late must be evaluated upon the circumstances appearing, and then determined by the

sound discretion of the trial court. Under the circumstances here, we are satisfied the trial court did not abuse its discretion after the hearing held pursuant to due notice, by ordering a jury trial in the matter.

V. In its cross-appeal Hartford contends the court erred in not sustaining its motion for judgment notwithstanding the verdict and in refusing to submit to the jury only the damage issue. We do not agree.

As pointed out in Division II, there was evidence from which a jury could find defendant Lefler was not negligent, and from which the jury might find he did not contribute to the creation of an emergency, if one did exist. There is no admission by defendant Lefler, directly or indirectly, that he violated a duty, either statutory or under common law. On the other hand, there is evidence from which a jury could find Lefler voluntarily pulled to the right shoulder as a courtesy move in order to let Hagey pass him without crossing the yellow line, and that he so negligently operated his tractor from a standing position that he lost control and fell off when he hit a bump on the dirt shoulder.

Hartford cites many cases for the proposition that although it is not usual for negligence, absence of contributory negligence and proximate cause to be established as a matter of law, they may be so established in factual situations like the one at bar. We shall consider only the recent case of Coulthard v. Keenan, supra, 256 Iowa 890, 129 N.W.2d 597, where a pedestrian was struck by defendant's automobile as she crossed a street on a crosswalk. There, as here, the trial court granted a new trial after a verdict for defendant, and we held there was no abuse of its discretion in so doing, in view of certain errors in the instructions, including the failure to instruct that defendant was negligent as a matter of law in violating section 321.257 of the Code after he had admitted the violation.

In the Coulthard case it was pointed out that, in the absence of an admission by his adversary, it is seldom proper for the court to instruct the jury that a party who has the burden of proof on an issue has established his claim as a matter of law. This rule was firmly established in Ruble v. Carr, 244

Iowa 990, 993, 994, 59 N.W.2d 228, 230, 231, and citations; Williams v. Stroh Plumbing & Electric, Inc., 250 Iowa 599, 601, 94 N.W.2d 750, 752, 82 A. L. R.2d 465; and Markman v. Hoefer, 252 Iowa 118, 127, 106 N.W.2d 59, 65.

 It was plaintiff's burden here to establish, as alleged, Lefler's failure to control his tractor and to reduce its speed to a reasonable rate under the circumstances. There was no admission of these violations, nor that Lefler's unexcused acts were the proximate cause of this accident and damage. We cannot say as a matter of law these allegations were established, and believe the trial court was correct in overruling the motion for judgment notwithstanding the verdict.

Being satisfied that motion was properly overruled and that the trial court did not abuse its discretion in setting aside the verdict and granting a new trial, the orders of the court in both matters must be affirmed. Costs equally divided.—Affirmed on appellants' appeal and on appellee's cross-appeal.

GARFIELD, C. J., and PETERSON, SNELL, MOORE and STUART, JJ., concur.

THORNTON and THOMPSON, JJ., concur specially.

HAYS, J., not sitting.

THORNTON, J. (concurring specially)—Plaintiff did not in its motion for a new trial invoke the broad inherent power of the trial court to grant a new trial in the interests of justice. See motion for a new trial, pages 62 and 63 of Record. Each ground therein stated comes within rule 244, Rules of Civil Procedure.

Though the trial court did opine about its broad power it actually granted the new trial because of error in giving the sudden emergency instruction.—See page 71 of Record. Plaintiff raised this question in its objections to the instruction, Record, pages 45 and 46, and in its motion for a new trial, Record, page 62. There was no evidence to sustain the giving thereof. This requires the grant of a new trial.

I would confine the decision to the foregoing.

THOMPSON, J., joins in this special concurrence.