Darlene Lucille GIBBS, Loy Gibbs, and Pamela Gibbs, by her father and next friend, Loy Gibbs, Appellants,

v.

Carol J. WILMETH and Hartford Accident & Indemnity Company, Appellees.

No. 52582.

Supreme Court of Iowa.

March 5, 1968.

Shuttleworth & Ingersoll, Cedar Rapids, for appellants.

Silliman, Gray & Stapleton, Cedar Rapids, for appellees.

LeGRAND, Justice.

On Christmas Day of 1962 this unfortunate head-on collision resulted in one death and personal injury to all other occupants of both cars. Three personal injury claims are involved in this appeal from judgment for defendants, following a jury trial and verdict in their favor.

Plaintiffs Loy Gibbs and Darlene Lucille Gibbs are husband and wife. The other plaintiff, Pamela Gibbs, is their daughter who was then three years old. Loy Gibbs was the owner and driver of one of the vehicles in this accident. Since their interests on this appeal are identical, all references here to Loy Gibbs apply equally to all three plaintiffs.

Carol J. Wilmeth was the driver of the other car, which was owned by Hartford Accident & Indemnity Company, by whom her husband, Oren J. Wilmeth, was employed. For convenience Carol J. Wilmeth is referred to herein as defendant and Hartford Accident & Indemnity Company as Hartford.

The accident occurred on U. S. Highway #6 about 15 miles west of Marengo, Iowa. Plaintiff was proceeding west and defendant east. A Christmas Eve snow had left the highway in an uncertain state. Portions were dry and clear; others were snow-packed and icy. Both drivers were admittedly aware of this. When the Hartford car was so close to plaintiffs that evasive action was impossible, it suddenly and without warning spun across the center line directly into plaintiffs' path. The result has already been mentioned. Further testimony will be referred to in our later discussion.

Plaintiff claims he is entitled to a new trial on each of six grounds. They are: (1) that the court erred in submitting to the jury defendant's affirmative defense of legal excuse; (2) that instruction nine on legal excuse was erroneous as applied to the facts of this case; (3) that the court erred in admitting the testimony of Reverend Burton C. Collier as part of the res gestae; (4) that the court erred in failing to submit to the jury the question of separate liability on the part of Hartford Accident & Indemnity Company; (5) that the court erred in permitting the jury to deliberate continuously for 20 hours and in giving a coercive verdict-urging instruction; (6) that the court erred in giving a verdict-urging instruction without notice to counsel and in the absence of counsel.

I. We discuss assignments one and two together. Plaintiff claims, first, legal excuse should have been withdrawn from the jury because the evidence shows any emergency which existed arose out of defendant's negligence and therefore she is not entitled to rely on that doctrine; and, second, even if proper to submit the issue, the instruction by which the trial court did so was fatally defective and requires a new trial. The factual situation which will determine the answer to this problem is as follows: Defendant and her husband, Oren J. Wilmeth, who was fatally injured in this accident, had left Des Moines bound for their home in Milwaukee. They traveled Interstate 80 out of Des Moines and when they reached Grinnell, where the interstate then ended, they took U. S. Highway 6 in an easterly direction. Here, too, they switched drivers, defendant taking over the operation of the car from her husband, who had driven from Des Moines to Grinnell.

All witnesses, including defendant, agree that the road was sometimes clear, sometimes snow-packed and icy. Although it was cold, a bright sun had melted the snow and ice in the well-traveled areas but in sheltered spots the witnesses variously described conditions as "slick", "icy", and "very slippery." Defendant was driving between 55 and 60 miles an hour, which was under the posted speed limit. She testified she had no trouble maneuvering the car or keeping it under control. This

testimony was substantiated by other witnesses, some for plaintiff and some for defendant, who stated they saw nothing untoward about the movement of defendant's car until immediately before the accident, and who stated also they had no difficulty in controlling their own cars, which were traveling at approximately the same speed.

At approximately 200 to 300 feet before the point of impact the road was snow-packed and icy over its entire surface. Here, too, defendant entered a slight right curve on a gradual downgrade. Defendant reduced the speed of her car but does not know to what extent. She testified at this time she had no trouble with the control of her car. At one time defendant testified the control did not change at any time for 500 feet prior to the impact; at another time she stated that her car "gave" or "swayed a little" but she steadfastly denied this movement was a skid of any kind. During these few critical moments before the accident defendant's husband was asleep. Apparently he was awakened suddenly by the slight movement of the car just mentioned. Defendant testified he grabbed the steering wheel from her and caused the car to spin out of control across the center line directly into the path of plaintiff. This, and only this, she says caused the car to veer over onto the other side of the road where it is conceded the impact occurred. Defendant insists that before her husband grabbed the steering wheel from her she was at all times in complete control of the operation and movement of the Hartford car.

 Legal excuse is a doctrine by which one seeks to avoid the consequences of his own conduct by showing justification for acts which would otherwise be considered negligent. This doctrine has been before us many times and has been defined to mean: (1) anything that would make it impossible to comply with the statute or ordinance; (2) anything over which the driver has no control which places his car in a position contrary to the provisions of the statute or ordinance; (3) where the driver of the car is confronted by an emergency not of his own making, and by reason thereof he fails to obey the statute; (4) where a statute specifically provides an excuse or exception.

 It is, of course, well settled that one whose own negligence has caused or contributed to a situation which makes it impossible for him to obey the law may not rely upon such conduct as a basis for invoking the doctrine. Kisling v. Thierman, 214 Iowa 911, 916, 243 N.W. 552; Wachter v. McCuen, 250 Iowa 820, 827, 96 N.W.2d 597, 600; Winter v. Moore, 255 Iowa 1, 4, 121 N.W.2d 82, 83, and citations; Mass v. Mesic, 256 Iowa 252, 255, 127 N.W.2d 99, 101; 7 Am.Jur.2d, Automobiles and Highway Traffic, section 359–360, page 905. Whether one has established a legal excuse is usually, but not invariably, a jury question. In considering this matter the evidence is to be viewed in the light most favorable to the one asserting the existence of legal excuse. Winter v. Moore, supra; Mass v. Mesic, supra, and citations.

 We are convinced the issue was properly submitted under the circumstances existing here. Plaintiff's argument to the contrary entirely disregards the requirement that we view the evidence in the light most favorable to defendant. We agree there is ample evidence from which the jury might have found defendant's own negligence triggered the crisis and the act of defendant's husband in grabbing the steering wheel was a last desperate attempt to bring the car back on its own side of the road, but there is also evidence from which the jury might have found defendant had control of her car until her husband awoke and inexplicably grabbed the steering wheel from her, causing the car to spin out of control.

We are not unmindful of the fact that defendant's testimony is in some vital

respects inconsistent with and contradicted by her pre-trial deposition, which was introduced into evidence. However, it is the jury's duty, not ours, to put credibility where it belongs. Under the facts existing here we find it was proper to permit the jury to determine if defendant had carried her burden of proving legal excuse.

We now consider instruction nine under which this issue was submitted to the jury. It provides:

"The defendants claim that if it is found that Carol J. Wilmeth violated a statute in the operation of the Hartford Accident & Idemnity Company owned vehicle, that she had a legal excuse for doing so, in that Oren Wilmeth had grabbed the steering wheel and changed the course of said vehicle, and that she was therefore not negligent. You are instructed that the burden of proof is upon the defendants to establish such legal excuse by a preponderance of the evidence.

By the term 'legal excuse' as applied to this case, is meant:

1. Anything that would make it impossible to comply with the statute.

2. Anything over which the driver has no control which places his car in a position contrary to the provisions of the statute.

3. When a driver is confronted by an emergency not of his own making, and by reason thereof fails to obey the statute.

If you find that defendant Carol J. Wilmeth has violated a statute as submitted to you in other instructions, and that she has established the grabbing of the steering wheel and changing of course by Oren Wilmeth as a legal excuse for such violation, under the above definition, then you should find the defendant Carol J. Wilmeth not negligent in violating the particular statute involved."

■ Plaintiff claims this instruction is fatally defective because it permitted the jury to find defendant had established legal excuse if she proved her husband grabbed the steering wheel from her, even if the jury also found her negligence caused him to do so, and because it failed to advise the jury as to defendant's speed and the condition of the highway as bearing on this matter. We must agree that this instruction is erroneous. We have frequently held it is the trial court's duty to see that the jury is fully and fairly instructed on the issues. Hartford Fire Insurance Company v. Lefler, 257 Iowa 796, 803, 135 N.W. 2d 88, 91; Overturf v. Bertrand, 256 Iowa 596, 604, 128 N.W.2d 182, 186; Law v. Hemmingsen, 249 Iowa 820, 826, 89 N.W. 2d 386, 391; Gardner v. Johnson, 231 Iowa 1233, 1235, 3 N.W.2d 606, 607, and citations.

Beyond the abstract definition in instruction nine, the jury remained entirely ignorant of what elements would justify them in finding defendant had established legal excuse. Important to their decision were, among other things, the condition of the highway, the presence or absence of snow and ice, whether defendant's car was skidding across the center of the road before defendant's husband grabbed the steering wheel, whether defendant's speed under the circumstances then existing was proper, and the effect of defendant's knowledge concerning the condition of the road on her duty to reduce her speed. It might almost be said that these circumstances were determinative in this case; yet none of them was called to the attention of the jury, either in this instruction or elsewhere. The instruction was incomplete and could be nothing except confusing to the jury.

■■ We have said it is the trial court's duty to see that the jury has a clear and intelligent understanding of what it is to decide. Overturf v. Bertrand, supra. We have also said it is the trial court's duty to instruct with reasonable fullness on the issues, and a mere abstract definition of a term, having no application to the par-

ticular controversy, is insufficient. Hartford Fire Insurance Company v. Lefler, supra. In Law v. Hemmingsen, supra, at page 826 of the Iowa Reports, at page 92 of 135 N.W.2d we said, "The instructions afford the only guide the jury has for correct application of the law to the facts."

■ Here the jury got nothing beyond a bare definition of legal excuse. The instruction as given would justify the conclusion that defendant's negligence was excused if she established her husband grabbed the steering wheel and changed the course of the car without pointing out it was important to decide *why* he did so. The instruction did not adequately advise the jury as to one of the essential elements necessary to establish sudden emergency as a legal excuse: absence of fault on the one who invokes it.

Under the circumstances existing here we find the instruction was highly prejudicial and entitles plaintiff to a new trial.

II. Since our holding in Division I means this case must be retried, we should decide several other matters assigned as errors which are likely to arise again at that time.

One of these concerns the testimony of Reverend Burton C. Collier, who was permitted to relate a conversation with defendant at the hospital on the day of the accident.

This witness had arrived at the scene of the accident several minutes after it occurred. After the injured parties had been removed by ambulance, he continued on his way and, as he neared Marengo, decided to stop and inquire about the condition of Mr. and Mrs. Wilmeth. When he arrived there, Oren Wilmeth was in the emergency room; the defendant was seated just outside that room. This was approximately one hour after the accident.

This is the testimony to which objection is made:

"Q. And did you then talk to Mrs. Wilmeth? A. Yes I did.

"Q. And do you recall what it was you talked to her about? A. Yes.

"Q. And what was that?

"Mr. Wilmarth: That is objected to as calling for hearsay; not part of the res gestae; calling for self-serving declarations; incompetent, irrelevant and immaterial.

"The Court: Overruled, you may answer.

\* \* \* \* \* \*

"A. As I recall, see, I think we did have a brief prayer after some other discussion which I do not recall exactly concerning her concern and his condition, then I did ask her if she wanted to talk about it, and as I recall she said it was awful. She recounted, I think, their having been in Des Moines, their traveling eastward, the condition of the roads, the car had swerved some and he had been sleeping and roused to grab the wheel, and that subsequently it had swerved into the path of this other car."

The witness also stated defendant was crying and was "very frantic and distraught, obviously concerned about his condition and what was going on in the emergency room."

■ The only objection now before us is that this was hearsay and not part of the res gestae. A statement is said to be part of the res gestae when it is a spontaneous exclamation so closely related to the transaction or occurrence in question as reasonably to appear to be prompted by it. 29 Am.Jur.2d, Evidence, section 708, page 769.

■ Various jurisdictions have established different rules by which to test the admissibility of res gestae statements. We have adopted two standards as controlling. They are: (1) spontaneity, and (2) such closeness of connection with the transaction

as to exclude any presumption of fabrication. State v. Berry, 241 Iowa 211, 215, 40 N.W.2d 480, 483; Bass v. Muenchow, 259 Iowa 1010, 146 N.W.2d 923, 926 and citations.

■■■ Plaintiff claims the statement here was too far removed in time to meet the requirement of spontaneity and also that it was not prompted by the event itself but was rather elicited by inquiry from Reverend Collier. Both these considerations are important as bearing on the defendant's state of mind. However, whether certain testimony is or is not a part of the res gestae cannot be determined by any hard and fast rule. Each case must be decided on its own facts. We cannot say, under the circumstances existing here, the lapse of an hour robbed defendant's statement of that spontaneity which the law requires. Nor is all information given in response to questioning rendered inadmissible, even if we assume what Reverend Collier said here amounted to an inquiry. We have several times held a statement in answer to a question does not necessarily violate the res gestae rule. The important consideration is the spontaneity of the statement, however elicited. State v. Berry, 241 Iowa 211, 216, 217, 40 N.W.2d 480; State v. Stafford, 237 Iowa 780, 785, 23 N.W.2d 832; Clark v. Van Vleck, 135 Iowa 194, 197, 198, 112 N.W. 648, 650; Dedman v. McKinley, 238 Iowa 886, 893, 29 N.W.2d 337. This was at most a non-leading inquiry not calculated to obtain an answer favorable to defendant nor to cause that degree of deliberation which would rob the statement of its spontaneity. In this connection see also Hill v. State, Tex.Crim. App., 420 S.W.2d 408, 410.

■■■ The admissibility of statements as being part of the res gestae is largely within the discretion of the trial court. 8 Am.Jur.2d, Automobiles and Highway Traffic, section 970, page 520; Dohse v. Market Mens Mutual Insurance Co., 253 Iowa 1186, 1191, 115 N.W.2d 844, 847; Bass v. Muenchow, supra. Furthermore as we said in Roushar v. Dixon, 231 Iowa 993, 997, 2 N.W.2d 660, 662, the tendency is to extend, rather than to narrow, the res gestae doctrine. See also Bass v. Muenchow, supra.

■■■ Although there are many instances in which we have reversed the trial court's ruling admitting res gestae statements, we hold there is no basis for doing so here.

The statement was made within an hour after an accident to which defendant had been a party. Her husband then lay in the emergency room with injuries she must have known were serious, although she may not have realized they were fatal. She was upset and distraught. There is ample support in the record to justify the trial court in finding she was still under the influence of events, which just an hour before, had turned her Christmas into a day of horror and tragedy. We find no reversible error in the court's ruling admitting this testimony.

III. Plaintiff alleges error for the trial court's failure to submit to the jury the issue of Hartford's separate liability, should the jury find defendant guilty of no negligence, but should also find Oren Wilmeth's action in grabbing the steering wheel from defendant was both negligent and the proximate cause of the accident.

This theory is based on the premise Oren Wilmeth, upon grabbing the steering wheel, became the driver of the Hartford car. Despite plaintiffs' protestations to the contrary, we doubt if the pleadings fairly present this issue. Oren Wilmeth was fatally injured in this accident. His personal representative was not made a defendant. The issue of his grabbing the steering wheel was brought into the case by way of affirmative defense, not as an allegation of negligence in plaintiff's petition. The petition, it is true, alleges that either Carol J. Wilmeth or Oren Wilmeth was the driver of the Hartford car. However, no specification of negligence, except by a strained construction, could be said to refer to the conduct of Oren Wilmeth. Nevertheless

we do not base our conclusion on the pleadings, and we assume for our purposes the petition was sufficient to rely on the alleged negligence of Oren Wilmeth.

The only witness who testified concerning his conduct immediately prior to the impact was the defendant. She states he grabbed the steering wheel from her without cause at a time when the car was within her complete control and there was no danger of an accident, although she concedes "he was trying to help." The impact instantaneously followed.

It is this action which plaintiff asserts made Oren Wilmeth the driver of the car at the time the accident occurred. No authority has been cited by plaintiff to justify this conclusion, although she claims section 321.1 (44), Code of Iowa, is broad enough to include him within its terms. We disagree.

■ The mere fact that one, with or without justification, grabs from another the steering mechanism of a car a split second before an accident occurred cannot be held to constitute such person a driver. We have found no case which so holds under facts similar to those present here. In Twogood v. American Farmers Mutual Automobile Insurance Association, 229 Iowa 1133, 296 N.W. 239 we held there was more to driving an automobile than putting one's hand on the steering wheel. In that case, too, we quoted approvingly from State v. Myers, 207 Iowa 555, 556, 223 N.W. 166 where we held only one person can be engaged in the physical operation of a motor vehicle at one time.

Several cases cited in the Twogood decision have held a person who seizes the steering wheel from another may be held to be in control of the car or to be its driver under certain circumstances. These cases, however, all involve facts which are not shown here. In each case the person undertaking to assume control either took over the operation of more than merely

the steering wheel or guided and steered the vehicle for some distance before the accident occurred, or both. Williams v. Nelson, 228 Mass. 191, 117 N.E. 189; O'-Connell v. New Jersey Fidelity and Plate Glass Insurance Co., 201 App.Div. 117, 193 N.Y.S. 911, affd. 235 N.Y. 583, 139 N.E. 744; Lumbermens Mutual Casualty Company v. McIver, 9 Cir., 110 F.2d 323.

■ Under the circumstances existing here we hold the trial court was correct in refusing to submit to the jury the question of separate liability on the part of Hartford based on the conduct of Oren Wilmeth.

We do not say Hartford could have no separate liability for Oren Wilmeth's negligence under any circumstances. However plaintiff's theory concerning such liability is based upon the claim that he was the driver of the car at the time of the accident. The case was tried on this theory; an instruction submitting this theory to the jury was requested; and the motion for new trial included this theory as one of its grounds. Our holding under this division is limited to a finding that the trial court was correct in refusing to submit to the jury the issue of Hartford's separate liability on this theory.

IV. In view of the foregoing we find it unnecessary to determine if the trial court committed reversible error in requiring the jury to deliberate overnight for a total of 20 hours without rest, and in then giving a verdict-urging instruction without notice to, or presence of, counsel which resulted in a verdict within an hour and a half thereafter. In this regard we refer to what we have recently said in Coulthard v. Keenan, 256 Iowa 890, 129 N.W. 2d 597, and Kracht v. Hoeppner and C & M Equipment Company, 258 Iowa 912, 140 N. W.2d 913. In both cases we expressed disapproval of prolonged jury deliberation without providing adequate rest for the jurors.

We have many times considered the propriety of a verdict-urging instruction and the circumstances under which one may be

given without coercing the jury. Each case is dependent upon its own circumstances. For a discussion of our previous holdings we refer to Coulthard v. Keenan, supra, and the citations referred to there at page 898 of 256 Iowa Reports.

For the reasons expressed in Division I hereof this cause is reversed and remanded for a new trial as to all plaintiffs against both defendants.

Reversed and remanded.

All Justices concur.

SNELL, RAWLINGS and BECKER, JJ., concur specially.

SNELL, Justice (concurring specially).

I concur in the reversal and remand in this case. As held by the majority in Division I, the instruction on legal excuse as applied to this case was inadequate and prejudicial. In addition thereto there are what I think are further errors that should be considered.

The majority opinion says it is conceded the collision occurred on plaintiffs' side of the road. Why was defendant's car there? It was there because of something incident to its operation. Defendant's car was either out of control or the driver failed to yield one-half the travelled way.

The car was owned by Hartford. Oren Wilmeth was an employee of Hartford and the car had been furnished to him for his use. There was no issue as to his right to use the car for personal use nor as to his wife's right to drive it.

At the time of the accident Mrs. Wilmeth was behind the wheel and had been driving. She testified: "After the 'give' in the car occurred it startled my husband and he moved over and grabbed the wheel. My control of the car definitely changed. It swerved over into the other lane. My husband had the steering wheel at this time. After my husband grabbed the wheel I don't remember anything more."

Mr. Wilmeth died as a result of the accident. The only defendants in the case at bar are Mrs. Wilmeth and Hartford, the owner of the car.

In the trial court there was tendered an issue as to who was the driver of the car. In the light of Mrs. Wilmeth's testimony I think there was such an issue. However, I think there is involved a more troublesome legal problem not dependent on the question of who was the driver.

By statute (section 321.493) civil liability is imposed upon the owner when damage is caused by reason of negligence of the driver, the car being driven with the consent of the owner.

Here defendants pleaded as an excuse for the car being in the wrong lane of traffic a sudden emergency not of the driver's own making.

Legal excuse was pleaded as an affirmative defense available to escape liability for what otherwise would be a basis for liability. It does not depend upon pleading by plaintiffs. The burden of establishing legal excuse is on defendants. McMaster v. Hutchins, 255 Iowa 39, 120 N.W.2d 509.

The doctrine of legal excuse is based on principles set forth in Kisling v. Thierman, 214 Iowa 911, 916, 243 N.W. 552. In that case four situations are listed that would serve as a legal excuse. In the case before us defendant relied on #3, i. e., "Where the driver of the car is confronted by an emergency not of his own making, and by reason thereof he fails to obey the statute."

In Winter v. Moore, 255 Iowa 1, 4, 121 N.W.2d 82, we said:

"For a sudden emergency confronting a motorist to be an excuse for violation of a statutory rule of the road it must not have been of his own making." (Citations)

It is so well settled as to need no citation of authority here that concurring tort feasors may be jointly or separately liable if proximate cause is shown. Here plaintiffs have not pleaded negligence on the part of

Oren Wilmeth as a basis for recovery and his estate is not named as a defendant. Under the pleadings plaintiffs may not recover here on an original claim based on what he did.

I think grabbing control of the steering wheel away from the driver might be held to be an act of negligence, but that is not the point here. Defendants injected into the pleadings and evidence the act of Oren Wilmeth, husband of defendant Carol J. Wilmeth, and agent and employee of defendand Hartford, as an excuse for what would otherwise be clearly a case of actionable negligence against both defendants.

A vital element in establishing emergency as a legal excuse is that what is claimed as the excuse was not attributable to the one urging the defense. The words in Kisling v. Thierman, supra, were used in applying the rule to the driver by saying, "not of his own making."

If the emergency was caused by Hartford's agent I do not think that Hartford can claim the emergency was not of its own making. I do not think Hartford should be permitted to hide behind an act of its own employee and agent as a legal excuse from liability.

For the purpose of our appellate review on this question we are not discussing other elements necessary for recovery such as proximate cause. Our question is what may be used as an excuse for defendant's car being on the wrong side of the road?

Mrs. Wilmeth offered as her excuse the claim that her husband grabbed the steering wheel and turned it counter clockwise into the path of plaintiffs' car. Admitting, arguendo, that this might be used as a legal excuse by Mrs. Wilmeth, it does not follow that the same act may excuse the one who caused the emergency.

Assume, for the purpose of illustration, the driver of a car is driving for the convenience and at the request of the owner with the owner riding in the right front seat. By his affirmative act the owner causes the driver to lose control with resulting damage to an innocent third person. The driver might have legal excuse from liability but it would be manifestly unsound to say that the owner could create the emergency and then escape liability by hiding behind his own act. That is exactly what Hartford is doing here except for the fact that the owner was acting through an agent and not in person.

It is true that plaintiffs did not base their cause of action on allegations of negligence against Oren Wilmeth, but that is unimportant. The issue was raised by the affirmative defense pleaded by defendants and that tendered the legal issue as to who may rely on legal excuse.

Ordinarily, relief from liability of a driver relieves the owner. An owner's employer's liability is statutory or on the theory of respondeat superior. Here we have a unique and most unusual situation. Avoidance of what would be liability on the part of Hartford is sought because of what Hartford's agent and employee did. Hartford should not be permitted to say that its agent caused the accident and because Mrs. Wilmeth might be excused Hartford is also excused.

In my opinion such a holding would be an erroneous distortion of the theory of legal excuse and would stretch a sound doctrine beyond the limits of plausibility. It would be manifestly unfair to the plaintiffs here.

Hartford was the owner of the car and the employer of Oren Wilmeth. Ordinarily Hartford would be liable for the tort of its agent and employee in the operation of its car. Even though neither Oren Wilmeth nor his estate is a party defendant I do not think Hartford should escape responsibility because of what he did under the doctrine of legal excuse.

If the same defense is not available to both defendants then separate verdict forms should be submitted to the jury so that the evidence might be considered in the light of

sound law. Superficially it might seem anomalous to say that a driver may be relieved from liability and the owner held liable, but not so when the doctrine of legal excuse is properly applied.

On retrial of this case the jury should be properly instructed.

RAWLINGS and BECKER, JJ., join in this special concurrence.